# EXHIBIT A

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2017-0702 |
| **Plaintiff**<br>Rhudy Hernandez<br>v. | **Attorney for the Plaintiff or the Plaintiff**<br>Nelson Robles |
| **Defendant**<br>U.s. Bank, N.a. | **Address of the Plaintiff's Attorney or the Plaintiff**<br>281 WEBSTER AVE<br>PROVIDENCE RI 02909 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | **Address of the Defendant**<br>No Known Address |

**TO THE DEFENDANT, MERS, Inc.:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 6/8/2017. | /s/ Henry Kinch<br>Clerk |

Witness the seal/watermark of the Superior Court

## SUPERIOR COURT

| **Plaintiff**<br>Rhudy Hernandez<br>v.<br>**Defendant**<br>U.s. Bank, N.a. | **Civil Action File Number**<br>PC-2017-0702 |
| --- | --- |

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, MERS, Inc., by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name  of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name  of person and designation _____

Page 1 of 2

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

| SERVICE DATE: _____/_____/_____ | SERVICE FEE $_____ |
| Month    Day    Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____

County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2



**STATE OF RHODE ISLAND**                    **SUPERIOR COURT**
**PROVIDENCE, SC.**


RHUDY HERNANDEZ,                          )
                                          )        CA NO. PC-2017-0702
    *Plaintiff*,                            )
                                          )        AMENDED COMPLAINT
vs.                                       )
                                          )        JURY DEMAND
U.S. BANK, N.A., AS TRUSTEE FOR,          )
SASCO MORTGAGE PASS-THROUGH               )
CERTIFICATES, SERIES 2007-BC3,            )
MORTGAGE ELECTRONIC                       )
REGISTRATION SYSTEMS, INC.,               )
                                          )
    *Defendants*.                          )

---

## INTRODUCTION

1.      This complaint is brought by Plaintiff Rhudy Hernandez against Defendants U.S.

Bank, N.A. as trustee for SASCO Mortgage Pass-through Certificates, Series 2007-BC3

(US Bank) and Mortgage Electronic Registration Systems, Inc. (MERS) for wrongful

foreclosure and Mortgagee's Foreclosure Sale of real property located at 200 Oaklawn

Avenue, Cranston, RI 02920.

2.      Plaintiff sets forth that the foreclosure of a mortgage, given by Plaintiff to

People's Choice Home Loan, Inc. (People's Choice) as Lender and Mortgage Electronic

Registration Systems, Inc. (MERS) as mortgagee, solely acting as nominee of People's

Choice, which was purportedly assigned to Defendant US Bank, is void as US Bank

lacked authority to exercise the statutory power of sale in the mortgage because the

assignment of the subject matter mortgage from MERS, as nominee of People's Choice,

to US Bank is void *ab initio*.

## JURISDICTION AND VENUE

3.      Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the State of Rhode Island.

4.      Plaintiff further avers that the Court has redressable claims over the matters in this complaint pursuant to the following statute:

a.  Plaintiff claims that the foreclosure was in violation of R.I.G.L. § 34-11-22 because the foreclosure did not comply with said statute as US Bank is not a mortgagee who could have invoked the statutory power of sale.

## PARTIES

5.      Plaintiff Rhudy Hernandez resides at and claims to be the rightful owner of 200 Oaklawn Avenue, Cranston, RI 02920 which is the subject property referenced herein.

6.      Defendant U.S. Bank, N.A. as trustee for SASCO Mortgage Pass-through Certificates, Series 2007-BC3 (US Bank) is located at 461 5th Ave, New York, NY 10017.

7.      Defendant Mortgage Electronic Registration Systems, Inc (MERS), is located at 1818 Library Street, # 300, Reston, VA 20190.

## FACTS

8.      On November 29, 2006, the subject property was granted to Plaintiff Rhudy Hernandez. The Deed evidencing transfer of the ownership of the subject property was recorded in the City of Cranston Clerks Office, Land Evidence Records in Book 3546 at Page 79 on December 4, 2006.

9.      On November 29, 2006, Plaintiff executed a mortgage and note for $436,000.00

to People's Choice Home Loans, Inc. (People's Choice) as Lender, and Mortgage

Electronic Registration Systems, Inc. (MERS) as mortgagee, acting solely as nominee of

Lender, People's Choice. The Mortgage was recorded in the City of Cranston Clerks

Office, Land Evidence Records in Book 3546 at Page 81 on December 4, 2006. (the

Hernandez Mortgage). (See: Exhibit 1).

10.     On March 20, 2007, People's Choice filed for protection from their creditors

under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy

Court, Central District of California as case number 8:07-bk-10765.

11.     On July 27, 2007, People's Choice filed a Notice of Rejection of Various

Contracts as Document # 558 in United States Bankruptcy Court, Central District of

California, case number 8:07-bk-10765. Listed as a rejected contract is Mortgage

Electronic Registration Systems, Inc. (MERS). (See: Exhibit 2, Id. at p.10).

12.     When People's Choice filed its rejection of the executory contract with MERS,

the contract was breached and its relationship with MERS was terminated. (See: 11

U.S.C. § 365(g); "the rejection of an executory contract or unexpired lease of the debtor

constitutes a breach of such contract or lease.").

13.     Once People's Choice terminated their relationship with MERS, MERS' authority

to assign the Hernandez Mortgage was also terminated.

14.     On February 19, 2009, MERS, acing solely as nominee for People's Choice,

purportedly assigned the Hernandez Mortgage to U.S. Bank N.A. (U.S. Bank) as trustee

for SASCO Mortgage Pass-through Certificates, Series 2007-BC3. Said assignment was

recorded in the City of Cranston Clerks Office, Land Evidence Records in Book 3999 at Page 8 on February 25, 2009. (See: Exhibit 3).

15.     The assignment of the mortgage executed by MERS to U.S. Bank is void *ab initio* because the assignor, MERS, lacked the authority to assign the Hernandez mortgage and had nothing to assign. (See: Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013); 17A Am. Jur. 2d. Contracts § 10 at 45-46 (2004) ("A void contract is void as to everybody whose rights would be affected by it if it were valid."). (See also: DiLibero v. MERS, No. 2013-190 (RI Supr. 2015)).

16.     On or about July 18, 2016, U.S. Bank retained Bendett & McHugh, P.C. to foreclose the Hernandez Mortgage, and subsequently caused to be sent to Plaintiff a Notice of Mortgagee's Foreclosure Sale, stating a scheduled mortgagee's sale date of September 9, 2016.

17.     On September 9, 2016, prior to the scheduled Mortgagee's Foreclosure Sale of the subject property, Plaintiff filed for protection from her creditors under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Rhode Island in case number 1:16-bk-11556.

18.     Defendant U.S. Bank purportedly foreclosed the Hernandez Mortgage and the subject property was purportedly sold at mortgagee's foreclosure sale on September 9, 2016 to a third party bidder.

19.     The foreclosure and Mortgagee's Foreclosure Sale were in violation of R.I.G.L. § 34-11-22, are void and without force or effect, as U.S. Bank was not a mortgagee who could have invoked the statutory power of sale, subsequent to an assignment which is void *ab initio*.

20.     Moreover, the foreclosure and mortgagee's sale was in violation of the automatic stay of bankruptcy codified at 11 USC § 362(c)(3)(A) further rendering those actions without force or effect.

21.     Plaintiffs herein seek a declaratory judgment that the foreclosure is void, injunctive relief preventing U.S. Bank from any further conveyance, foreclosure and or eviction action, and to quiet title to the subject property.

<u>COUNT I</u>
**DECLARATORY JUDGMENT & INJUNCTIVE RELIEF**

22.      Plaintiff repeats and reincorporates by reference all paragraphs above as if fully articulated herein.

23.     People's Choice filed a Notice of Rejection of Various Contracts in United States Bankruptcy Court listing MERS as a rejected contract. (See: Exhibit 2, Id. at p.10).

24.     When People's Choice filed its rejection of the executory contract with MERS, the contract was breached and its relationship with MERS was terminated. (See: 11 U.S.C. § 365(g); "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease.").

25.     Once People's Choice terminated their relationship with MERS, MERS' authority to assign the Hernandez Mortgage was also terminated.

26.     After the relationship between MERS and People's Choice was terminated, MERS, acting solely as nominee for People's Choice, purportedly assigned the Hernandez Mortgage to U.S. Bank.

27.     The assignment of the mortgage executed by MERS to U.S. Bank is void *ab initio* because the assignor, MERS, lacked the authority to assign the Hernandez mortgage and had nothing to assign.

5

28.     U.S. Bank purportedly foreclosed the Hernandez Mortgage and purportedly sold the subject property at mortgagee's foreclosure sale.

29.     At the time of the foreclosure and mortgagee's foreclosure sale U.S. Bank was not the properly assigned mortgagee subsequent to an assignment which is void *ab initio*, as noted herein above.

30.     Additionally, prior to the scheduled foreclosure and sale, Plaintiff filed for protection from her creditors under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Rhode Island in case number 1:16-bk-11556.

31.     Defendant U.S. Bank has no properly assigned interest in the property, the mortgage or note and thus has no standing to enforce the mortgage that is the subject of this action.

32.     As a result of U.S. Bank's lack of authority to exercise the statutory power of sale the foreclosure of the Hernandez Mortgage and mortgagee's foreclosure Sale of the subject property are in violation of R.I.G.L. § 34-11-22.

33.     The foreclosure and mortgagee's sale was also in violation of the automatic stay of bankruptcy codified at 11 USC § 362(c)(3)(A) further rendering those actions without force or effect.

34.     As a result of Defendants unauthorized actions in wrongfully assigning the Hernandez Mortgage, foreclosure, and auction of the subject property, the Plaintiff has suffered damages including emotional distress, loss of title to property, court costs, attorney's fees in defenses of foreclosure and eviction.

35.     The Defendants wrongful actions are the direct cause of the harms to Plaintiff as alleged herein.

36.     Plaintiff is entitled to a Declaratory Judgment that the foreclosure and mortgagee's foreclosure sale are void and without force and effect.

37.     Plaintiff is entitled to injunctive relief enjoining U.S. Bank from proceeding with any conveyance of the subject property, and further foreclosure and/or eviction action.

38.     Plaintiff is entitled to a Court Order requiring that U.S. Bank take all necessary steps to restore legal title to her property as if no foreclosure sale had ever occurred.

39.     Plaintiff is entitled to a Court Order requiring that MERS rescind the void assignment of the Hernandez Mortgage, which was recorded in the City of Cranston Clerks Office, Land Evidence Records in Book 3999 at Page 8, on February 25, 2009.

40.     Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

**COUNT II**
**QUIET TITLE**

41.     Plaintiff repeats and incorporates all paragraphs above as if fully articulated herein.

42.     The real estate at issue is located at 200 Oaklawn Avenue, Cranston, RI 02920.

43.     The Plaintiff and Defendant U.S. Bank both claim fee simple interest in the aforesaid property.

44.     The Plaintiff claims ownership and title to the Property from a Deed granting the property to her which was recorded in the City of Cranston Clerks Office, Land Evidence

Records in Book 3546 at Page 79 on December 4, 2006. The name and address of said Plaintiff has been set forth herein above.

45. Defendant, U.S. Bank, claims ownership and title to the Property subsequent to a void foreclosure and mortgagee's foreclosure sale on September 9, 2016. Defendant U.S. Bank's address is set forth herein above.

46. At the time of the foreclosure and mortgagee's foreclosure sale U.S. Bank was not the properly assigned mortgagee subsequent to a void assignment as noted herein above.

47. At the time of foreclosure and mortgagee's sale the Plaintiff was protected from her creditors by the automatic stay of bankruptcy as noted herein above.

48. The foreclosure sale conducted by the Defendant is void as against public policy.

49. The Plaintiff has suffered damages and loss of property interest as a direct result of the conduct of the Defendant.

50. The Plaintiff is entitled to a judgment quieting title to the Property and declaring that Plaintiff Rhudy Hernandez is the owner of the Subject Property.

51. Plaintiff is entitled to a Court Order requiring that U.S. Bank take all necessary steps to restore legal title to her property as if no foreclosure sale had ever occurred.

52. Plaintiff is entitled to a Court Order requiring that MERS rescind the void assignment of the Hernandez Mortgage, which was recorded in the City of Cranston Clerks Office, Land Evidence Records in Book 3999 at Page 8, on February 25, 2009.

53. Plaintiff is entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

WHEREFORE, Plaintiffs' demand that this Honorable Court:

i.   Declare that the Plaintiff Rhudy Hernandez, is the true and lawful owner of 200 Oaklawn Avenue, Cranston, RI 02920.

ii.  Enjoin and restrain Defendant and/or their agents from conveyance of the property, continuing or initiating any foreclosure actions or eviction actions against the Plaintiff or her tenants until the title to the property in dispute is cleared.

iii. Declare that the foreclosure proceeding and/or sale of the subject property is void;

iv.  Order that Defendant U.S. Bank take all necessary steps to restore legal title to the subject property as if no foreclosure or sale had ever occurred.  In addition, Plaintiff is entitled to be returned to her status and circumstance prior to the Defendant's wrongful foreclosure and sale;

v.   Order that Defendant MERS rescind the wrongful assignment as noted herein above as having been recorded in the City of Cranston Clerk's Office, Land Evidence Records;

vi.  Award Plaintiff punitive damages;

vii. Award the Plaintiff reasonable attorney's fees and costs; and Grant such other relief which is just and equitable

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

Dated: May 19, 2017


Plaintiff, Rhudy Hernandez,
By her Attorney,


*/s/ Nelson Robles*
Nelson Robles (9649)
668 Hartford Avenue
Providence, RI 02909
401-572-3335 Telephone
401-572-3344 Facsimile
nrobles85@gmail.com

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

Exhibit 1

Return To:
PEOPLE'S CHOICE HOME LOAN,
INC.
7515 IRVINE CENTER DR.
IRVINE, CA 92618

```
2006120400011B0 Bk: 3646 Pg: 81
RECORDED Cranston, RI  Pg 1 of 20
12/04/2006 14:45:00  MTG
```

Prepared By:

People's Choice Home Loan,
Inc.
7515 Irvine Center Drive,
Irvine, CA 92618

——————————[Space Above This Line For Recording Data]——————————

# MORTGAGE

MIN 100273900104024970

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  November 29, 2006                     , together with all Riders to this document.
(B) "Borrower" is RHUDY HERNANDEZ   INDIVIDUAL

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

10402497

RHODE ISLAND - Single Family - Fannie Mae/Freddie Mac                    Form 3040  1/01 (rev. 11/02)
UNIFORM INSTRUMENT WITH MERS
-6A(RI) (0205)
Page 1 of 15                    Initials:
          VMP MORTGAGE FORMS - (800)521-7291

200612040301180 Bk: 3546 Pg: 82
RECORDED Cranston, RI  Pg 2 of 20
12/04/2006 14:45:00  MTG

**(D)** "**Lender**" is PEOPLE'S CHOICE HOME LOAN, INC.

Lender is a CORPORATION
organized and existing under the laws of WYOMING
Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA  92618

**(E)** "**Note**" means the promissory note signed by Borrower and dated November 29, 2006
The Note states that Borrower owes Lender FOUR HUNDRED THIRTY-SIX THOUSAND AND 00/100
Dollars
(U.S. $436,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 1, 2037

**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

10402497

-6A(RI) (0208)                    Page 2 of 15                    Initials: _____ Form 3040  1/01 (rev. 11/02)

200612040001180 Bk: 3546 Pg: 83
RECORDED Cranston, RI Pg 3 of 28
12/04/2006 14:45:00 MTG

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the

COUNTY                    of                    PROVIDENCE              :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
'A'

Parcel ID Number: 11-3433                         which currently has the address of
200 OAKLAWN AVENUE                                                        [Street]
CRANSTON                         [City], Rhode Island 02920         [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

10402497

Initials

-6A(RI) (0206)                Page 3 of 15                Form 3040  1/01 (rev. 11/02)

2006120400011B2 Bk: 3546 Pg: 94
RECORDED Cranston, RI Pg 4 of 20
12/04/2006 14:45:00 MTG

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

10402497

-6A(RI) (0208)

Page 4 of 15

Initials: 

Form 3040  1/01 (rev. 11/02)

2006120400011B0 Bk: 3546 Pg: 95
RECORDED Cranston, RI  Pg 5 of 20
12/04/2006 14:45:00  MTG

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

10402497

-6A(RI) (0208)                    Page 5 of 15                    Initials: _____  Form 3040  1/01 (rev. 11/02)

2006120400011B0 Bk: 3846 Pg: 96
RECORDED Cranston, RI Pg 6 of 20
12/04/2006 14:45:00 MTG

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

10402497

-6A(RI) (0208)                    Page 6 of 15                    Initials_____    Form 3040  1/01 (rev. 11/02)

2006120400011B0 Bk: 3546 Pg: 87
RECORDED Cranston, RI Pg 7 of 20
12/04/2006 14:45:00 MTG

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

10402497

-6A(RI) (0208)                    Page 7 of 15                    Form 3040  1/01 (rev. 11/02)

200612040001180 Bk: 3546 Pg: 88
RECORDED Cranston, RI Pg 8 of 20
12/04/2006 14:45:00 MTG

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

104C2497

200612040001180 Bk: 3846 Pg: 69
RECORDED Cranston, RI  Pg 9 of 20
12/04/2006 14:45:00  MTG

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

10402497

VMP -6A(RI) (0208)

Page 9 of 15

Initials:

Form 3040  1/01 (rev. 11/02)

2006124000110180 Bk: 3648 Pg: 90
RECORDED Cranston, RI  Pg 10 of 20
12/04/2006 14:45:00  MTG

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

10402497

-6A(RI) (0208)                              Page 10 of 15                    Initials                Form 3040  1/01 (rev. 11/02)

2006120400001160 Bk: 3646 Pg: 91
RECORDED Cranston, RI Pg 11 of 20
12/04/2006 14:45:00 MTG

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

10402497

-6A(RI) (0208)

Page 11 of 15

Initials:

Form 3040 1/01 (rev. 11/02)

200612340001180 Bk: 3546 Pg: 92
RECORDED Cranston, RI  Pg 12 of 20
12/04/2006 14:45:00  MTG

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

10402497

-6A(RI) (0208)

Page 12 of 15

Initials: _____

Form 3040  1/01 (rev. 11/02)

200612040001100 Bk: 3546 Pg: 93
RECORDED Cranston, RI Pg 13 of 20
12/04/2006 14:45:00 MTG

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

10402497

-6A(RI) (0208)

Page 13 of 15

Initials:

Form 3040  1/01 (rev. 11/02)

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

200612040001190 Bk: 3546 Pg: 94
RECORDED Cranston, RI  Pg 14 of 20
12/04/2006 14:45:00  MTG

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____         _____ (Seal)
                                                   RHIDY HERNANDEZ              -Borrower

_____         _____ (Seal)
                                                                                -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                               -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                               -Borrower

_____ (Seal)         _____ (Seal)
                        -Borrower                                               -Borrower

10402497

 -6A(RI) (0208)                Page 14 of 15                Form 3040   1/01 (rev. 11/02)

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

200612040001180 Bk: 3546 Pg: 95
RECORDED Cranston, RI  Pg 15 of 20
12/04/2006 14:45:00  MTG

**STATE OF RHODE ISLAND,**                              County ss:

On this   29   day of  November 2006, in  Providence  ,
in said County, before me personally appeared

Rhudy Hernandez

each and all to me known and known to me to be the person(s) executing the foregoing instrument and
acknowledged said execution to be his/her/their free act and deed.

_____
Notary Public

John Freedoo
Comm exp.
10/26/09

10402497

-6A(RI) (0208)                    Page 15 of 15        Initials          Form 3040  1/01 (rev. 11/02)

200612040001100 Bk: 3546 Pg: 95
RECORDED Cranston, RI Pg 18 of 20
12/04/2006 14:45:00 MTG

200408140000530 Bk: 2851
RECORDED Cranston, RI Pg
08/14/2004 11:12:00 DEED

## EXHIBIT "A"

That certain lot of land, with all buildings and improvements thereon, situated at the southeasterly corner of Oaklawn Avenue and Freedom Drive in the City of Cranston and State of Rhode Island, laid out and designated as Lot No. 55 (fifty-five) on that plat entitled, "DEAN ESTATES-PLAT NO. 4 UNDER DEED OF TRUST TO JOSEPH H. COEN & JOHN MONTAQUILA, CRANSTON, R.I. OCTOBER, 1954 N.M. VERDE ENG'R.", which plat is recorded with the Land Evidence Records in said City of Cranston in Plat Book 14 at page 60 and on Plat Card 413

Subject to restrictions of record.

## PROPERTY ADDRESS:

200 Oaklawn Avenue
Cranston, RI 02920
Assessor's Plat 11, Lot 3433

200512040001100 Bk: 3546 Pg: 97
RECORDED Cranston, RI  Pg 17 of 20
12/04/2006 14:45:00  MTG

## FIXED/ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)- Rate Caps)
### Including Prepayment Penalty

THIS FIXED/ADJUSTABLE RATE RIDER is made this 29th day of  November, **2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure  Borrower's Fixed/Adjustable Rate Note (the "Note") to **PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:  200 OAKLAWN AVENUE, CRANSTON, RHODE ISLAND 02920

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN BORROWER'S MONTHLY PAYMENTS. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of 7.165%. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of, January, 2010 and the adjustable interest rate I will pay may change on that day every 6 months thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

10402497

200612040001180 Bk: 3546 Pg: 90
RECORDED Cranston, RI  Pg 18 of 20
12/04/2006 14:45:00  MTG

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six and one-quarter percentage points (6.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Beginning on the First Principal and Interest Payment Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment, until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.165 % or less than 7.165 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.165 %. My interest rate will never be less than 7.165%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the sixty first monthly payment due date. Each monthly payment thereafter shall consist of both Principal and interest.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

10402497

ioarr2                                    page 2 of 4                                    09/30/03

200612040001180 Bk: 3646 Pg: 99
RECORDED Cranston, RI Pg 19 of 20
12/04/2006 14:46:00 MTG

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

10402497

ioarr3                              page 3 of 4                              09/30/03

2008120400201190 Bk 3546 Pg 100
RECORDED Cranston, RI Pg 20 of 20
12/04/2006 14:45:00 MTG

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an increase in the interest rate.

If within Twelve (12) months from the date of execution of the Security Instrument, I make a full prepayment, I will pay a prepayment charge of two percent (2%) of the balance due at the date of the payoff.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
RHUDY HERNANDEZ          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

10402497

ioarr4                              page 4 of 4                              09/30/03

# RHODE ISLAND JUDICIARY
## Court User Identification Card
### Acceptance and Acknowledgement Form

| Name: Robles, Nelson | Card # 9708 |
|---|---|
| RI Bar No.: | |

Upon receipt of my Rhode Island Judiciary identification card (hereinafter "identification card"), I hereby acknowledge and agree as follows:

1. The identification card received today by me is issued for my exclusive possession and use and will be presented upon my entering all Rhode Island courthouses. I will not present the card to access a courthouse for **personal use,** or any other purpose other than during the course of my official duties and responsibilities. I will not allow any other person to borrow, duplicate, use or otherwise take possession of the identification card, and I understand and agree that the court access card does not provide entrance to any other person, including but not limited to, any person who may be entering the courthouse with me such as a witness, client or member of my staff.

2. I understand, agree and warrant that I am not carrying any weapon into a court facility upon presentation of this card, and any violation of the weapons policy shall subject me to the imposition of discipline.

3. I agree to immediately notify the Judiciary's Director of Security, both verbally and in writing, in the event that the identification card is lost, stolen or misplaced. Upon issuance of a new or replacement identification card, I will pay a reissuance fee of ten dollars ($10.00) to the Rhode Island Judiciary. This fee is payable by check or money order only.

4. I acknowledge and accept that the Judiciary reserves the right to cancel, suspend, limit or modify the terms of my usage of the identification card and any access to the Rhode Island courthouses related thereto at any time.

5. I agree to return the identification card within forty eight (48) hours to the Judiciary's Director of Security upon the voluntary or involuntary termination or suspension of my license to practice law, or as otherwise directed by the Judiciary's Director of Security.

Signature _____

Date _5/2/17_____

Return this completed form to:

**Stephen J. Kerr, Director of Security**
**Licht Judicial Complex**
**250 Benefit Street, Room 205**
**Providence, RI 02903**
**Tel. (401) 222-6700**

For Office Use Only

Card Returned: _New_  Status Verified: _Entity CMS_  Fee Charged: _____
5/2/17

CUIC 04/13

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

Exhibit 2

## ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc., PO Box 2026, Flint, MI 48501-2026 holder of a mortgage

from Rhudy Hernandez

to Mortgage Electronic Registration Systems, Inc.

dated November 29, 2006, and recorded with the Records of Land Evidence in the city of Cranston on December 4, 2006 at 14:45 at Book 3546, Page 81

assigns said mortgage and the note and claim secured thereby to US Bank National Association, as Trustee for SASCO Mortgage Pass-Through Certificates, Series 2007-BC3, 425 Walnut Street, Cincinnati, OH 45202

Property Address:    200 Oaklawn Avenue, Cranston, RI 02920

IN WITNESS WHEREOF, the said Mortgage Electronic Registration Systems, Inc. has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by Francis J. Nolan, Assistant Secretary and Vice President*

this 19th day of February, 2009

Mortgage Electronic Registration Systems, Inc.

By: _____
Francis J. Nolan, Assistant Secretary and Vice President*

*For signatory authority see Corporate Resolution recorded with the Records of Land Evidence in the City of Cranston at Book 2364, Page 134.

The Commonwealth of Massachusetts

Middlesex, ss                                                   February 19, 2009

On this 19th day of February 20 09, before me, the undersigned notary public, personally appeared Francis J. Nolan _____, proved to me through satisfactory evidence of identification, which were personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

Capacity: (as Assistant Secretary and Vice President* _____ for Mortgage
Electronic Registration Systems, Inc. _____ )

_____ (Affix Seal)
Notary Signature

My commission expires: _____



Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

Exhibit 3

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

# Exhibit A

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:12 PM
Envelope: 1069661
Reviewer: Alexa G.

Case 8:07-bk-10765-RK   Doc 558-1   Filed 07/27/07   Entered 07/27/07 19:38:13   Desc
Exhibit A List of Rejected Agreements   Page 2 of 10

EXHIBIT A

| Counterparty | Contact | Address | City | State | Zip | Description |
|---|---|---|---|---|---|---|
| 4530-4570 Eastern LLC | c/o The Ribeiro Company | 195 E Reno Avenue, Suite A | Las Vegas | NV | 89119 | Lease re Premises: 4530 S. Eastern Avenue, Suites 1 & 2  Las Vegas, NV 89119  CC# 175 |
| Adam Fenn/ Mike Wilson | Merit Assest Services | 1925 N. Green Valley Pkwy | Henderson | NV | 89014 | REO Broker Agreement |
| Alexander Properties Company | | One Annabel Lane, Suite 201 | San Ramon | CA | 94583 | Lease re Premises: 4000 Executive Parkway, Suite 520  San Ramon, CA 94583-4339  CC# 941 |
| Allen, Jeffrey F. | | 25 PINE CREST DRIVE | Chagrin Falls | OH | 44022 | |
| Ali Zaghab | | 401 Main Street 1st Floor | Laurel | MD | 20707 | REO Broker Agreement |
| Angie Borras | Houses in San Antonio | 1802 NW Military, Ste 300 | San Antonio | TX | 78213 | REO Broker Agreement |
| Anna Helton | RE/MAX advantage | 47800 Grabci | | MI | 48051 | REO Broker Agreement |
| Anthony, Robert | 1797 Capetown Circle | | Cost Mesa | CA | 92627 | |
| APC Data Center UPS | | 132 Fairgrounds Road | West Kingston | RI | 02892 | IT Department Contract/License/ Agreement |
| Arden Realty Limited Partnership | | 16000 Ventura Blvd, Ste. 700 | EnCino | CA | 91436 | Second Amendment To Lease  Sublease re Premises: 16260 Ventura Blvd., Suite 403  Sherman Oaks, CA 91403 |
| Aurora Loan Services | | 327 Inverness Dr. South, 2nd Floor | Englewood | CO | 80112 | Whole Loans |
| Azizi, Sheryl | | 5512 Santa Gertrudes Avenue | Garden Grove | CA | 92845 | |
| Barry Whittington | Re/Max First | 5901 N. Western, Suite 100 | Oklahoma City | OK | 73151 | REO Broker Agreement |
| Baar Stearns Mortgage Capital Corp. | Eileen Albus | 383 Madison Avenue | New York | NY | 10179 | Warehouse Lender |
| Ben Crouch | Century 21 | 1726 North State Street | Greenfield | IN | 46140 | REO Broker Agreement |
| Bernice Edelman | Keller Williams Elite | 8201 Preston Road, Suite 265 | Dallas | TX | 75225 | REO Broker Agreement |
| BIT Holdings Forty-Six, Inc. | Attention: Mr. C. Dean Patinsky | c/o Patinsky Group, LLC | Houston | TX | 77055 | Sublease re Premises:  Towne Center Two  1330 Lake Robbins Drive, Suite  The Woodlands, TX 77380 |
| Bob Massey | Stelson Realty Inc. | 7711 N. Claranalinas, Suite 119 | Corpus Christi | TX | 78475 | REO Broker Agreement |
| Bonanno, Martin | Director of Loan Servicing | 27526 Capricho | Mission Viejo | CA | 92692 | Employment Agreement |
| Bozzas, Simon | Regional Manager Texas | Retail Division | The Colony | TX | 75056 | Employment Agreement |
| Brenda Cadle | Garden Lakes Realty | 36 Burnett Ferry Road | Rome | GA | 30165 | REO Broker Agreement |
| Broadway 101 Office Park, Inc. | c/o Transwell Crow Company | P.O. Box 36556 | Chicago | IL | 60694-6556 | Lease re Premises:  2151 E. Broadway Road, Suite 219  Tempe, AZ  85282-1933  CC# 112 |
| Carola ONeill | Coldwell Banker Primus | 110 Brockway | Palatine | IL | 60067 | REO Broker Agreement |
| Cathy Davis | Mid Amarica Property Partners | 1436 Traid Center Drive | St Peters | MO | 63376 | REO Broker Agreement |
| CBC- Credit | Contact: Scott Milne | 250 East Broad Street | Columbus | OH | 43215 | IT Department Contract/License/ Agreement |
| CBClnosvis, Inc. | | 250 East Broad Street | Columbus | OH | 43215 | Master Agreement for Services (Draft) |
| Century Plaza Associates LLC | c/o Mack-Cali Realty Corporation | 11 Commerce Dr. | Cranford | NJ | 07016 | Lease re Premises:  103 Carnegie Center  Suite 111  Princeton, NJ 08540 |
| Cheryl Harris | | 2828 Telegraph | Flat Rock | MI | 48134 | REO Broker Agreement |
| ChoicePoint Precision Marketg, Inc. | Attn: General Counsel | 1000 Alderman Dr. | Alpheretta | GA | 30005 | ChoicePoint Master Marketing Services Agreement |
| Chris West | Green River Capital | 3269 S. Main St., Ste 250 | Salt Lake City | UT | 84116 | REO Broker Agreement |
| CHUBB | Contact: 21 Williams & Williams | Wood Gorman & Bogert Ins. Brokers | Tustin | CA | 92780 | Agreement re Worker's Compensation Insurance |
| Cindy Greene | Century 21 Williams & Williams | 4509 Highway 58 | Chattanooga | TN | 37416 | REO Broker Agreement |
| Cisco Networking Devices (Sransmel) | | 8535 N State Highway 161 | Irving | TX | 75039 | IT Department Contract/License/ Agreement |
| Citigroup Global Markes Realty (Group) | | 390 Greenwich St., 6th Floor | New York | NY | 10013 | Whole Loans |
| Clark, Alex | | 2102 Business Center Drive | Irvine | CA | 92612 | IT Department Contract/License/ Agreement |
| Clark, Alex | Regional Vice President | | Long Beach | CA | 90813 | Employment |
| CMD Realty Investment Fund IV, L.P | c/o CMD Realty Investors, LP | | Atlanta | GA | 30328 | Lease re Premises:  410 North  44th Street, Suite 300  Phoenix, AZ  85006-7605  CC# 946 |
| COGNOS | | 2020 Ashton | Irvine | CA | 92614 | IT Department Contract/License/ Agreement |
| Commerce Velocity, Inc. | | 300 Commerce, Suite 100 | Irvine | CA | 92602 | License and Services Agreement |
| Commerce Velocity, Inc. | Attn: Rama Rao | Attn: Umresh Verma | Irvine | CA | 92602 | License and Services Agreement (Final) |

303B5-0020/DOCS_LA/170303v1

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017... Case 8:07-bk-10765-RK    Doc 558-1    Filed 07/27/07    Entered 07/27/07 19:38:13    Desc
Envelope: 1069661
Reviewer: Alexa G.
Exhibit A List of Rejected Agreements    Page 3 of 10

EXHIBIT A

| Compliance Ease | Compliance Ease | Burlingame Headquarters | ComplianceEase Division | | Burlingame | CA | 94010-1823 | IT Department Contract/License/Agreement |
|---|---|---|---|---|---|---|---|---|
| Compliance Minutemen Capital Co. | Joseph Meehan | LogicEase Solutions Inc. | c/o Washington Mutual | | Pennant Wang | PA | 19462 | IT Department Contract/License/Agreement |
| Concord Legal Scope - Loan Sale and Broker | | | 1360 Old Placerville Road | Suite 100 | Sacramento | CA | 95827 | Warehouse Lender |
| Craig Johnson | Johnson Realty | | 1515 North Jefferson Street | | Huntington | IN | 46750 | REO Broker Agreement |
| Craig Murphy | Erb Realty Inc. | | 1922 1st Ave South | | Anoka | MN | 55303 | REO Broker Agreement |
| Credit Suisse | Gary Timmerman | | 302 Carnegie Center 2nd Floor | | Princeton | NJ | 08540 | Warehouse Lender |
| Credit Suisse First Boston LLC DLJ Mortgage Capital, Inc. | | DLJ Mortgage Capital, Inc. | 335 Madison Avenue, 19th Floor | | New York | NY | 10010 | Warehouse Lender/EPD Claimants |
| Creed Smith | | | | | New York | NY | 10017 | Whole Loans |
| Cutter, Steve M. | Creed Smith & Smith Real Estate | | 200 Union Blvd, Suite 540 | | Lakewood | CO | 80228 | REO Broker Agreement |
| Cybertrust, Inc. | Vice President, Wholesale Division | | 65 Golf Ridge Drive | | Dove Canyon | CA | 92679 | Employment Agreement |
| Dalfsny, Melissa | | | PO Box 67000, Dept #254901 | | Detroit | MI | 48267 | Risk Management Agreement |
| Dale Alsup | Guest Realty | | 18004 CLEAR LAKE DRIVE | | Lutz | FL | 33548 | |
| Dan Humeston | Century 21 Moneyworld | | 1502 Braham Rd | | Como | IL | 38519 | REO Broker Agreement |
| Dan Miles | Montavey Bar Real Estate Services | | 376 N Stephanice, #4 | | Henderson | NV | 89014 | REO Broker Agreement |
| Dan Townsend | Olympic Properties | | 720-A Capitole Avenue | | Capitola | CA | 95010 | REO Broker Agreement |
| Darren Shephard | Realty Network | | 2883 Via De La Valle, #G528 | | Del Mar | CA | 92014 | REO Broker Agreement |
| Data Check, Inc. | Contact-Beth Miller | | 7143 S. Braden | | Tulsa | OK | 74136 | REO Broker Agreement |
| Data Check, Inc. | | | 800 S El Camino Real, #212 | | San Clemente | CA | 92672 | Agreement re Pre-Employment Screening |
| David Krook | Pioneer Valley Real Estate Services Corp. | | 800 S. El Camino Real, #212 | | San Clemente | CA | 92672 | Service Agreement |
| David Rubin | Re/Max Premier | | 606 Federal State | | Boisdahland | MA | 01007 | REO Broker Agreement |
| Dawn Moyna | Moyna Properties, Inc. | | 30559 Pinetree Road | | Pepper Pike | OH | 44124 | REO Broker Agreement |
| DB Structured Products, Inc. | Michael Commisso, Managing Director | | 3808 North Federal Hwy, Suite 108 | | Boca Raton | FL | 33431 | REO Broker Agreement |
| Deb Jeffris | Realty Executives Chattanooga | | 60 Wall Street | | New York | NY | 10005 | Warehouse Lender/EPD Claimants |
| Denley Investment & Management Co. | c/o Management Office | | 6505 Lea Hwy | | Chattanooga | TN | 37421 | REO Broker Agreement |
| Dennis Franklin | Re/Max Active Realty | | Suite 100, 5560 LBJ Freeway | | Dallas | TX | 75240 | Lease re Premises: 5520 LBJ Freeway, Suite 150  Dallas, TX 75240-2322  CC#162 |
| Dennis Laney | CornerStone Realty Associates LLC | | 4056 Decoto Rd | | Fremont | CA | 94555 | REO Broker Agreement |
| DynaCom Management | | | 6500 Placemill Drive, Suite 100 | | Knoxville | TN | 37919 | REO Broker Agreement |
| DynaCom Management, Inc. | | | 1548 Bond Street, Ste. 106 | Naperville, IL 60563 | | | | Whole Lease |
| DynaCom Management, Inc. | | | 1952 McDowell Road, Suite 101 | | Naperville | IL | 60563 | Lease re Premises:  1952 McDowell Road, Suite 306  Naperville, IL 60563-8507 |
| Escora | | | 1952 McDowell Road, Suite 101 | | Naperville | IL | 60563 | Lease re Premises:  1952 McDowell Road, Suite 302  Naperville, IL 60563-8507 |
| Ed Riley | Vail REO Realty | | 2222 Michelson Dr., Suite 508 | | Irvine | CA | 92612 | IT Department Contract/License/Agreement |
| Edward J. McTaggart | | | 1415 W 22nd St, Tower Floor | | Oakbrook | IL | 60523 | REO Broker Agreement |
| Eman Pittsburgh III Associates, LP | c/o Matty Sundberg | Grubb & Ellis | 4100 One Commerce Square | | Carlsbad | TX | 92009 | Lease re Premises:  5838 Edison Place, Suite 201  Carlsbad, CA 92008 |
| EMC Mortgage (Service) | Attn: Jenna Kemp | | | | New York | NY | 10022 | Lease re Premises:  Three Parkway Center West, Suite 105  Pittsburgh, PA 16220 |
| EMC Mortgage (Service) | Attn: Jenna Kemp | | Two MacArthur Ridge | | Irving | TX | 75038 | Subservicing Agreement |
| EMC Mortgage (Service) | Attn: PCHLT 2005-3 | | Two MacArthur Ridge | | Irving | TX | 75038 | Subservicing Agreement |
| EMC Mortgage (Service) | Wells Fargo Bank, National Assoc. | | Two MacArthur Ridge | | Columbia | MD | 21045 | Servicing Agreement |
| EMC Mortgage Corporation | | | Two MacArthur Ridge | | Irving | TX | 74038 | Servicing Agreement |
| EMC Mortgage Corporation | | | Two MacArthur Ridge | | Irving | TX | 74038 | First Amendment to Subservicing Agreement dated 10/1/05 |
| EMC Mortgage Corporation | | | 2780 Lake Vista Drive | | Lewisville | TX | 75067 | First Amendment to Subservicing Agreement dated 6/1/05 |
| EMC Mortgage Corporation | | | 2780 Lake Vista Drive | | Lewisville | TX | 75067 | Subservicing Agreement |

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:41 PM
Envelope: 1069661
Reviewer: Alexa G.

Case 8:07-bk-10765-RK    Doc 558-1    Filed 07/27/07    Entered 07/27/07 19:38:13    Desc
Exhibit A List of Rejected Agreements    Page 4 of 10

EXHIBIT A

| Company | Contact/Attn | Address | Addl/Suite | City | State | Zip | Agreement |
|---|---|---|---|---|---|---|---|
| EMC Mortgage Corporation | | Two MacArthur Ridge | 800 Hidden Ridge Dr. / Suite 200 | Irving | TX | 74038 | Second Amendment to Subservicing Agreement dated 4/1/05 |
| EMC Mortgage Corporation | Stephen Golden | 27780 Lake Vista Drive | | Lewisville | TX | 75067 | Warehouse Lender/EPD Claimants |
| EMC Mortgage Corporation | Attn: Jenna Collie-Kemp | Two MacArthur Ridge | 800 Hidden Ridge Dr. / Suite 200 | Irving | TX | 74038 | Subservicing Agreement |
| EMC Mortgage Corporation | Attn: Jenna Collie-Kemp | Two MacArthur Ridge | 800 Hidden Ridge Dr. / Suite 200 | Irving | TX | 74038 | Subservicing Agreement |
| EMC Mortgage Corporation | | Two MacArthur Ridge | 800 Hidden Ridge Dr. / Suite 200 | Irving | TX | 74038 | First Amendment to Subservicing Agreement dated 4/1/05 |
| E-Oscar | | Dept 224501 | | Detroit | MI | 48255 | IT Department Contract/License/ Agreement |
| Ethan Conrad Properties, Inc. | RESIDENT MANAGER OR OWNER | 1300 National Drive, Suite 100 | | Sacramento | CA | 95834 | Lease re Premises: 1300 National Drive, Suite 170 Sacramento, CA 95834 CC# 942 |
| ExpoTrade | | 6761 Sierra Court, Suite G | | Dublin | CA | 94568 | Product and Service Purchase Agreement |
| Experian Information Solutions, Inc. | Information Solutions Division | 475 Anton Blvd. | | Costa Mesa | CA | 92626 | Prescreening Services Agreement |
| Experian Information Solutions, Inc. | Attn: General Counsel | Information Solutions Division | 475 Anton Blvd. | Costa Mesa | CA | 92626 | Prescreening Services Agreement |
| Fair Isaac Software, Inc. | Attn: Contracts Administration | 3661 Valley Centre Dr. | | San Diego | CA | 92130 | Fair Isaac Software, Inc. BridgeLink Network Services Agreement (Draft) |
| First American Real Estate Solutions, LP | | 4 First American Way | | Santa Ana | CA | 92707 | Software License and Support Agreement |
| FNIS Real Estate Tax Services | | 222 E. Huntington Drive, Ste. 200 | | Monrovia | CA | 91016 | Tax Services Agreement |
| Franklin Credit Management Corporation | | 101 Hudson Street, 25th Floor | | Jersey City | NM | 07302 | Whole Loans |
| Fred Lewin | Re/Max 100, Inc. | 8005 Brownsboro Park Blvd. | | Louisville | KY | 40207 | REO Broker Agreement |
| Fujle, Donna Jean | Regional Vice President | West Region, Wholesale Division | 4699 Mesa Place | Honolulu | HI | 96816 | Employment Agreement |
| Gena Foster | Coldwell Banker Archway Inc. | 900 W North St. | | Jackson | MI | 49202 | REO Broker Agreement |
| Gene Whitlock/Gene Whitlock | 1st Florida Sale and Leasing | 635 Arbukio | Winter Springs, FL | | | | REO Broker Agreement |
| Gentry, Scott | Hub Manager of Broker Direct Office | 1619 Vista Luna | | San Clemente | CA | 92673 | Employment Agreement |
| Gentry, Scott | Hub Manager of Broker Direct Office | 1619 Vista Luna | | San Clemente | CA | 92673 | Employment Agreement (superseding all prior agreements) |
| Gerry Roy | Royal Real Estate Service | 342 Britton Street | | Chicopee | MA | 01020 | REO Broker Agreement |
| Gloria Treadway | Southern Realty Group | 7704 West Taylor St | Griffin, GA | | | | REO Broker Agreement |
| Glorious Sun Robert Martin LLC | c/o Mack Cali Realty Corp | 1100 Clearbrook Road | | Elmsford | NY | 10523 | Lease re Premises: One Blue Hill Plaza, Floor 7 Pearl River, NY CC# 182 |
| GMAC-RFC | Michael Bugden, Managing Director | 1848 North California Blvd., Suite 600 | | Walnut Creek | CA | 94596 | Warehouse Lender/EPD Claimants |
| GoApply, Inc. | | 65 Enterprise | T: 888-435-3239 | Aliso Viejo | CA | 92656 | Lender Agreement |
| GoApply, Inc. | | 65 Enterprise | | Aliso Viejo | CA | 92656 | Lender Agreement |
| Goldman Sachs Mortgage Company | | 85 Broad Street | | New York | NY | 10004 | Whole Loans |
| Graeler, Darren | 18872 WICKLOW LANE | | | | | | IT Department Contract/License/ Agreement |
| Heather Shield | Janet & Cohn Real Estate | 5 Beech Street | | Rockland | ME | 04841 | REO Broker Agreement |
| Hewlett-Packard | | 8000 Foothills Blvd. MS 5530 | | Roseville | CA | 95747 | Software and Support Agreement |
| Hidden Valley Equities, LLC | | 1750 112th Avenue NE, Suite C234 | | Bellevue | WA | 98004 | Sublease re Premises: 1750 112th Avenue NE, Suite D-155 Bellevue, WA 98004-3727 |
| HMSA Hawaii | Wood Gutmann & Bogart Ins. Brokers | 15501 Red Hill Ave. | Suite 100 | Tustin | CA | 92780 | Agreement re Medical/Vision/Dental Insurance Plans |
| Holly King | The Group, Inc. | 3257 W 20 Street | | Greely | CO | 80634 | REO Broker Agreement |
| Homecomings Financial Network, Inc. | | 8725 Sky Park Court, 3rd Fl | | San Diego | CA | 92123 | Interim Servicing Agreement |
| Homecomings Financial Network, Inc. | | 8725 Sky Park Cour. 3rd Floor | | San Diego | CA | 92123 | Whole Loans |
| HP Backup Tapes | | 11444 Olympic Blvd., Ste 700 | | Los Angeles | CA | 90064 | IT Department Contract/License/ Agreement |
| HP Hardware Maintenance | | 8000 Foothills Blvd. | | Roseville | CA | 95747 | IT Department Contract/License/ Agreement |
| HP/IAG Esplanade at Locust Point - IV (Landlord/Management) | c/o Hamilton Partners | 300 Park Blvd. | | Itasca | IL | 60143 | Lease re Premises: 1901 Butterfield Road Suite 810 Downers Grove, IL 60515-*XX4 CC#180 |
| iDirect Marketing, Inc. | | 9880 Research Dr., 1st Fl. | T: 949-753-7300 | Irvine | CA | 92618 | Software and Support Agreement |
| iDirect Marketing, Inc. | | 9880 Research Dr., 1st Fl. | T: 949-753-7300 | Irvine | CA | 92618 | Authorization to Proceed (ATP) Agreement |
| Instant Infosystems | | 20000 Marine Ave., Suite 250 | (310) 750-7253 | Torrance | CA | 90503 | Software License and Support Agreement |

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

Case 8:07-bk-10765-RK    Doc 558-1    Filed 07/27/07    Entered 07/27/07 19:38:13    Desc
Exhibit A List of Rejected Agreements    Page 5 of 10

EXHIBIT A

| Name | Contact | Address | Suite | City | State | Zip | Agreement |
|---|---|---|---|---|---|---|---|
| Intelli-Mine Inc. | | 1200 Quail Street, Suite #270 | | Newport Beach | CA | 92660 | Purchase and Software license Agreement |
| Interliant, Inc. – RegsData Division | | 3000s Ladyface Court | | Agoura Hills | CA | 91301 | SVAR Monitor Agreement (Draft) |
| Intex (AMG # 511) | | 110 A Street | | Needham | MA | 02494 | IT Department Contract/License/ Agreement |
| ITF Lehman Capital – P&I Account | | 1650 Ximeno Avenue | | Long Beach | CA | 90804 | Whole Loans |
| IXIS Real Estate Capital Inc. | Ray Sullivan | 9 West 57th Street | | New York | NY | 10019 | Warehouse Lender |
| James Maitz | Century 21 Dabbs & Associates | 900 Maple Ave. | | Homewood | IL | 60430 | REO Broker Agreement |
| James Moore | Associated Brokers | 58483 Antelope Trail | | Yucca Valley | CA | 92284 | REO Broker Agreement |
| James Osborn | Jean Osborn, Realtors | 586 Permission Rd. | | Ozark | MO | 65721 | REO Broker Agreement |
| Janice Maschek | Shoreline Realty | 13725 Hwy 20 | | Clearlake Oaks | CA | 95423 | REO Broker Agreement |
| Jason Reed | Century 21 | 400 West Oak | | Crescent City | CA | 95531 | REO Broker Agreement |
| Jason Strat | ReMax Suburban, Inc. | 4389 Schaumer Rd., Ste 100 | | Rolling Meadows | IL | 71730 | REO Broker Agreement |
| Jeff Torres | Light House Realty | 12615 Central Avenue | | Chino | CA | 91710 | REO Broker Agreement |
| Jeff Burress | Cryo-Lake Realtors | 435 New Byhall Road | | Collierville | TN | 38017 | REO Broker Agreement |
| JER CDP Harlequin, LLC | P.O. Box 52183 | MSC 820 | | Phoenix | AZ | 85072-2183 | Lease or Sublease |
| Jim Banford | Real Estate Asset Disposition Corp. | 1730 Borrego Way, #5 | | West Palm Beach | FL | 33401 | REO Broker Agreement |
| Jim Hudgens | Ravies Real Estate | 537 Trent Lane | | Orange | CT | 06477 | REO Broker Agreement |
| Jim Laslandro | Caunturn Realtors | 3342 East Thousand Oaks Blvd, Suite 210 | | Westlake Village | CA | 91362 | REO Broker Agreement |
| Jim Owens | Prudential Woodmont Realty | 5107 Maryland Way | | Brentwood | TN | 37027 | REO Broker Agreement |
| Joe Martin | Solid Source Realty | 3716 Rolling Creek Dr. | | Buford | GA | 30519 | REO Broker Agreement |
| John Buchanan | All American Properties, Inc. | 600 N. Magnolia Ave | | Grove Harbour | FL | 32043 | REO Broker Agreement |
| John Koorner | ReMax Premier | 24516 Harper Ave | | St. Clair | MI | 48080 | REO Broker Agreement |
| John Mason | Mason & Co Realty | 216 S Second St, Ste A | | Jacksonville | AR | 72076 | REO Broker Agreement |
| Joseph Shabani | Realty Executives | 11295 W. Washington Blvd. | | Culver City | CA | 90230 | REO Broker Agreement |
| Joy Riley | Westcott Properties | 178 Broadway | | Providence | RI | 02903 | REO Broker Agreement |
| Joyce Smith | Homa Real Estate, Pine Lake | 101 West Treehaven Drive | | Lincoln | NE | 68521 | REO Broker Agreement |
| Justin Simon | ERA Pro Real Estate | 457 Marketplace Dr. | | Freeburg | IL | 62243 | REO Broker Agreement |
| Kay Williams | Kay Williams Realty | 12053 Mariposa, Suite E | | Hesperia | CA | 92345 | REO Broker Agreement |
| Kelly Cortez | Century 21 Landmark | 7121 Eastern Avenue | | Bell Gardens | CA | 90201 | REO Broker Agreement |
| Ken Elking | Metal Realtors | 1582 Tully, Suite A | | Modesto | CA | 95350 | REO Broker Agreement |
| Ken Olson | New England Group Services | 4 Cochasset Street | | Foxboro | MA | 02035 | REO Broker Agreement |
| Kenneth Van Horn | Huff Realty | 4913 Fairview | | Cincinnati | OH | 45242 | REO Broker Agreement |
| Kesler, Rick | Assistant Hub Manager | of Indus Bridge Direct Hub Office | 3772 Belgrave Avenue | Garden Grove | CA | 92845 | Employment Agreement |
| Kevin Singer | Century 21 All Service Inc. | 212 Bloomfield Street | | Johnstown | PA | 15904 | REO Broker Agreement |
| Kornswiet, Neil | | 105 EMERALD BAY | | Laguna Beach | CA | 92651 | |
| Kronos Incorporated | | 297 Billerica Road | (978) 250-9800 | Chelmsford | MA | 01824 | Master Lease Agreement re Timekeeping System |
| Kronos Incorporated | | 297 Billerica Road | (978) 250-9800 | Chelmsford | MA | 01824 | Professional Services Agreement |
| Lamar Going | Indianapolis Real Estate Co. | 6640 Gunnery Road | | Indianapolis | IN | 46278 | REO Broker Agreement |
| LandAmerica Credit Services | | 23622 Calabasas Rd | Suite 123 | | | | Analysis Amendment Agreement |
| Lee Richards | Richards Realty | 6494 Cedar Hill Rd. | | Cedar Hill | MO | 63016 | REO Broker Agreement |
| Lehman Brothers Inc. | Underwriters | 745 Seventh Ave, 7th Floor | | New York | NY | 10019 | Underwriting Agreement |
| | | 745 Seventh Avenue, 7th Floor | | New York | NY | 10019 | Whole Loans |

30185-002DOCS_LA:17203b-1

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:12 PM
Envelope: 1069661
Reviewer: Alexa G.

Case 8:07-bk-10765-RK    Doc 558-1    Filed 07/27/07    Entered 07/27/07 19:38:13    Desc
Exhibit A List of Rejected Agreements    Page 6 of 10

EXHIBIT A

| Name | Contact | Address | | City | State | Zip | Agreement |
|---|---|---|---|---|---|---|---|
| Lehman Commercial Paper Inc. | Robert Guglielmo | 745 7th Avenue 19th Floor | | New York | NY | 10019 | Master Repurchase Agreement |
| Leo Nordling | Nordine Realtors | 2939 Madrid Ave, PMB# 280 | | Hermosa Beach | CA | 90254 | REO Broker Agreement |
| Leeds+Place (Avg monthly) (varied on usage) | | P.O. Box 894166 | | Los Angeles | Ca | 90189 | IT Department Contract/License/ Agreement |
| Libbi Logan | Lynn Pace Real Estate, Inc. | 301 S. Sunflower Rd | | Cleveland | MS | 38732 | REO Broker Agreement |
| Linea, Rebecca | | 26416 MONTECITO LANE | | Mission Viejo | CA | 92691 | |
| Lincoln ASB Colorado Center, LLC | c/o Lincoln Property Company Commercial | 2000 S. Colorado Blvd., Suite 2100 | | Denver | CO | 80222 | Lease re Premises:  2000 S. Colorado Blvd., Suite 2-200  Denver, CO 80222-7934  CO# 945 |
| Linda Bartato | Prudential Americana Group, Realtors | 8337 W. Sunset Blvd., Ste. 150 | | Las Vegas | NV | 89113 | REO Broker Agreement |
| Linda Collins | Troy Young Realty | 219 Hidden Valley Rd | | Macon | GA | 31217 | REO Broker Agreement |
| Linda Vargas | Executive Realty | 11754 Johnville Road, Suite 105 | | Austin | TX | 78759 | REO Broker Agreement |
| Loan Performance (AMG # 511) | | 188 The Embarcadero, 3rd Fl (415) 596-3600 | | San Francisco | CA | 94105 | IT Department Contract/License/ Agreement |
| LogicEase Solutions, Inc. (LSI) | Attn: Legal Department | 2550 N. Red Hill Avenue | | Burlingame | CA | 94010-1023 | Master Services Agreement |
| LogicEase Solutions, Inc. (LSI) | REMAX Alliance | 2550 N. Red Hill Avenue | | Bellevue | WA | 98004 | Master Services Agreement |
| LogicEase Solutions, Inc. (LSI) | Attn: Legal Department | | | Bellevue | WA | 98004 | Master Services Agreement |
| LogicEase Solutions, Inc. (LSI) | | One Bay Plaza | | Burlingame | CA | 94010-1023 | Master Services Agreement |
| Lori Fowler | Area Properties Real Estate | 708 N. Main | | Sikeston | MO | 63801 | REO Broker Agreement |
| L'Shenice Page | Re/Max Alliance | 37569 Five Mile | | Livonia | MI | 48154 | REO Broker Agreement |
| LSI Title Company | Attn: President | 2550 N. Red Hill Ave | | Santa Ana | CA | 92705 | Agreement for Services |
| LSI Title Company | | 2550 N. Red Hill Avenue | | Santa Ana | CA | 92705 | Service Provider Agreement (Reconveyances) |
| LSI Title Company | Attn: General Counsel | 700 Cherrington Parkway | | Coraopolis | PA | 15108-4303 | Agreement for Services |
| Lumigent Technologies | | 289 Great Road | (978) 206-3700 | Acton | MA | 01720 | End User license Agreement |
| Malinda Gipson | Re/Max Real Estate | 2102 Fowler Ave | | Jonesboro | AR | 72401 | REO Broker Agreement |
| Marc Goodell | Goedert Real Estate | 1324 North Main Street | | Adrian | MI | 49221 | REO Broker Agreement |
| Marc Oppenheimer | RE/MAX Realty | 5591 Chamblee Dunwoody Rd | | Atlanta | GA | 30350 | REO Broker Agreement |
| Marcia Warner | Coldwell Banker United, Realtor | 18734 Hwy 105 West | | Montgomery | TX | 77356 | REO Broker Agreement |
| Marcus Edwards | RE/MAX Alliance | 37569 Five Mile | | Livonia | MI | 48223 | REO Broker Agreement |
| Marianda Shirley | RE/MAX Greator Atlanta | 1565 Old Norcross | | Lawrenceville | GA | 30045 | REO Broker Agreement |
| Marilyan "Sally" Riley | Advest Realty LLC | 7094 E. 83rd Street | | Kansas City | MO | 64133 | REO Broker Agreement |
| Marlo Polo | The Polo Group | 12968 N. Dale Marby Hwy | | Tampa | FL | 33618 | REO Broker Agreement |
| Merk Gaedert | Goedert Real Estate | 1324 North Main Street | | Adrian | MI | 49221 | REO Broker Agreement |
| Mark J Lyons | REO Real Estate Connection | 1803 East Main Street | | Waterbuy | CT | 06705 | REO Broker Agreement |
| Mark Jenks | Re/Max Specialists | 12846 San Jose | | Jacksonville | FL | 32223 | REO Broker Agreement |
| Marty Dieter | Marty's Real Estate | 9 Ludlow Avenue | | Index-Gossett | MA | 01151 | REO Broker Agreement |
| Mary Greenspan | Greenspan Brokerage | 2340 E Calveda Bld., Ste 6 | | Pahrump | NV | 89048 | REO Broker Agreement |
| MaiLab (AMG # 511) | | 3 Apple Hill Drive | 508-647-7000 | Natick | MA | -2098 | IT Department Contract/License/ Agreement |
| Matt Armstrong | Indy REO Inc. | 8470 Allison Point Blvd. #100 | | Indianapolis | IN | 46220 | REO Broker Agreement |
| Matt Finch | Black Hawk Real Estate | 109 East Main Street | Jonesborough, TX | | | | REO Broker Agreement |
| Matt Swift | Swift Gore Realty | 12280 Westheimer, Suite 100 | | Houston | TX | 77077 | REO Broker Agreement |
| Matthew Fisher | Re/Max Premier Properties | 2100 N. Dallas Pkwy, Ste 102 | | Plano | TX | 75093 | REO Broker Agreement |
| Maureen Connor | Equity Capital Real Estate | 883 Island Drive, Suite 203 | | Alameda | CA | 94502 | REO Broker Agreement |
| Melissa Allen | Century 21 Lee-Mac | 605 West Warwick | | Alma | MI | 48801 | REO Broker Agreement |
| Merrill Lynch Mortgage Lending, Inc. | Donna Alexander and John A. O'Grady | 4 World Financial Center | | New York | NY | 10080 | Warehouse Lender/EPD Claimants |

30985-00300CS_LA:170030v1

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 ... Case 8N
Envelope: 1069661
Reviewer: Alexa G.

Case 8:07-bk-10765-RK   Doc 558-1   Filed 07/27/07   Entered 07/27/07 19:38:13   Desc
Exhibit A List of Rejected Agreements   Page 7 of 10

EXHIBIT A

| Name | Contact / Title | Address | City | State | Zip | Agreement |
|---|---|---|---|---|---|---|
| MERS | | 13059 Collections Center Drive | Chicago | IL | 60693 | IT Department Contract/License/ Agreement |
| Michael Batelle | RE/MAX of Grand Rapids, Inc. | 4860 36th Street SE, Suite 100 | Grand Rapids | MI | 49546 | REO Broker Agreement |
| Michael Eaton | RE/MAX First Choice, Inc. | 18600 W. McNichols | Detroit | MI | 48219 | REO Broker Agreement |
| Michael Myers | Century 21 Excel Realty | 8235 Katy Freeway, 2nd Floor | Houston | TX | 77024 | REO Broker Agreement |
| Mighty Ducks Sports Suite | Mighty Ducks Hockey Club, LLC | 2695 Katella Ave | Anaheim | CA | 92806 | Suite Agreement |
| Mike Liavoli | Realty Executives East | 38580 Garfield, Suite #1 | Clinton Township | MI | 48038 | REO Broker Agreement |
| Mike Sagar | Re/Max Towne Square | 1101 Jamestown Blvd, Suite O-4 | Watsonville | GA | 30877 | REO Broker Agreement |
| Milich, Michael | | 321 LEHIGH WAY | Oakland | NJ | 7436 | Office Lease |
| Millins, Timothy | Southwest Division Manager, Wholesale Division | 521 S. Sunnyside | Elmhurst | IL | 60126 | Employment Agreement |
| Mortgage Asset Research Institute | | 12150 Sunrise Valley Drive, #200 | Reston | VA | 20191 | IT Department Contract/License/ Agreement |
| Mortgage-Backed Notes | | 383 Madison Ave. | New York | NY | 10179 | Underwriting Agreement |
| Mortgage-Backed Notes (McKee Nelson LLP) | Mortgage-Backed Notes | 383 Madison Ave. | New York | NY | 10179 | Engagement Letter Agreement |
| Municipal Mortgage & Equity LLC | Attention: Office Manager | Bear, Stearns & Co. Inc. Suite 1100 | Tampa | FL | 33607 | Lease re Premises: 3000 Bayport Drive, Suite 1000 Tampa, FL 33607-8405 |
| Nadine Gano | Century 21- David Brigham | 504 S. Superior | Albion | MI | 49224 | REO Broker Agreement |
| Nancy Wainscott | Real Estate Asset | 1790 Borrego Way #5 | Vero Beach | FL | 33461 | REO Broker Agreement |
| Nalda McClain-Morgan | Century 21 Semco Realtors, Inc. | 713 First Street | Kennett | MO | 63857 | REO Broker Agreement |
| Nick Percodall | New England Property Solutions, Inc. | 25 Braintree Hill, Suites 410 | Braintree | MA | 02184 | REO Broker Agreement |
| Nick Signorello | Signorello Realty | 7121 W Archer | Chicago | IL | 60638 | REO Broker Agreement |
| Nomura Credit & Capital, Inc. | Legal Department | 2 World Financial Center, Building B, 18th Floor | New York | NY | 10281 | Whole Loans |
| Northwest I, LLC | | 2300 W. Sahara, Box One | Las Vegas | NV | 89102 | Lease re Premises: 2450 Fire Mesa Street, Suite 160 Las Vegas, NV 89128 CC# 957 |
| Nowicki, Vince R. | Regional Vice President | | Carlsbad | CA | 92009 | Employment Agreement |
| Nuwest Equity Partners, Inc. | Western Division of Wholesale Division | 30220 Rancho Viejo Road, Suite 4 | San Juan Capistrano | CA | 92675 | Whole Loans |
| Option One Mortgage Acquisitions, LLC | | 3400 Northwestern Highway 4th Floor | Southfield | MI | 48034 | Sublease re Premises: 20700 Civic Center Drive, Suite 390 Southfield, MI 48076 |
| OutsourceIT Ing | Attention: Director of Real Estate & Leasing | 18501 Irvine Center Drive | Irvine | CA | 92612 | Lease re Premises: 13650 Dulles Technology Drive Suite 178 Herndon, VA 20171 CC# 947 |
| Pacific Garden Center | | 570 W Covina Blvd | San Dimas | CA | 91773 | IT Department Contract/License/ Agreement |
| Pacific Guardian Center | | Suite 2775, Makiki Tower 737 Bishop Street | Honolulu | HI | 96813 | Office Lease |
| Pam Butler | Coldwell Banker Premiere Realty | 737 Bishop St., Suite 2775 | Honolulu | HI | 96813 | Lease re Premises: 735 Bishop Street, Suite 430 (5427) Honolulu, HI 96813-4820 CC# 111 |
| Patricia Cox | Commonwealth Realty | 3915 Cascade Road, Suite. #235 | Atlanta | GA | 30331 | REO Broker Agreement |
| Pat Atkinson | Century 21 Murphy & Rudolph | 1040 Lori Lane | Westerville | OH | 30031 | REO Broker Agreement |
| Patrick Fleming | Fleming Real Estate, Inc. | 804 Balsam Terrace | Charlotte | NC | 28214 | REO Broker Agreement |
| Patti Stark | Commonwealth Realty | P.O. Box 7177 | Gulfort | MS | 39506 | Employment Agreement |
| Patty Baba | Re/Max Elite Group | 93 S Main Street | Pontotoc | MS | 38863 | Employment Agreement |
| Paul Raymond | Re/Max Select | 17027 Tomahawk Trail | White Pigeon | MS | 49099 | REO Broker Agreement |
| PCFI | Uncommon William Chrome of Board of Directors | 1320 West Hill Rd | Flint | MI | 48507 | REO Broker Agreement |
| PCFI (Company) | | | | | | Servicing Fee Rebate Agreement |
| Peter Van Deusen | Really Executives | 6605 Lee Hwy | Chattanooga | TN | 37421 | Various Agreements |
| Phan, Tony | Marketing Director | 27831 Via Del Agua | Mission Viejo | CA | 92677 | Employment Agreement |
| Plantiko, Brad | Executive Vice President | of Finance & Strategic Planning 8131 Malloy Dr. | Huntington Beach | CA | 92646 | Employment Agreement |
| Portford Solutions | | 3175 Sabana Court, Bldg D | Ontario | CA | 91764 | IT Department Contract/License/ Agreement |
| Portford Solutions Group, Inc. | | 24367 Magic Mtn. Pkwy #70 | Valencia | CA | 91355-1202 | Software and Support Agreement |

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 106966
Reviewer: Alexa G.

Case 8:07-bk-10765-RK   Doc 558-1   Filed 07/27/07   Entered 07/27/07 19:38:13   Desc
Exhibit A List of Rejected Agreements   Page 8 of 10

EXHIBIT A

| Name | Contact / Company | Address | Phone | City | State | Zip | Agreement |
|---|---|---|---|---|---|---|---|
| PowerContacts | Softchoice Corp. | 11444 Olympic Blvd, Ste 780 | (800) 996-8404 | Los Angeles | CA | 90064 | IT Department Contract/License/ Agreement |
| Promodisg | | 22 la rue de la Reunion | | Paris | | 76020 | Software License Agreement |
| Quincy Foxboro, LLC | Attention: Garian Morse | c/o Morris & Morse Company Inc | | Boston | MA | 02110 | Lease re Premises: 2 Hampshire, Suite #TBD  Foxboro, MA 02035-2997  CC# 184 |
| Direct Lending Telecommunications Service Agreement | Soan Saunders | 19000 MacArthur Blvd | Ste 400 | Irving | CA | 92612 | IT Department Contract/License/ Agreement |
| Rafael Dagnessen | Quantum Realtors | 2117 Hillhurst Avenue | | Los Angeles | CA | 90027 | REO Broker Agreement |
| Randy Chambers | Hearthstone Realty | 2375 Bayberry Lane | | | | | REO Broker Agreement |
| RES.NET Corp. | | 24381 Commercentre Dr. 2nd Floor | | Lake Forest | CA | 92630 | Unlimited User Subscription Agreement |
| Residential Funding Corporation | Mitchell Nomura | 1945 North Carolina Blvd., Suite 400 | | Walnut Creek | CA | 94598 | Warehouse Lender |
| Richard Wolnik | Century 21 Northwest REO | 950 N Elmhurst Rd | | Mount Prospect | IL | 60056 | REO Broker Agreement |
| Rick Killar | J. Harvey Realty | 44900 Middle Ridge Rd | | Amherst | OH | 44001 | REO Broker Agreement |
| Robert Manhardt | Realty Executives | 4435 E. Chandler Blvd., #200 | | Phoenix | AZ | 85048 | REO Broker Agreement |
| Robert Manhardt | Realty Executives | 4435 E. Chandler Blvd., #200 | | Phoenix | AZ | 85048 | REO Broker Agreement |
| Robert Storie | Real Estate Professionals, Inc. | 4730 Poplar Ave., Suite 4 | | Memphis | TN | 38117 | REO Broker Agreement |
| Robert Taylor | Real Estate Gallery | 8811 Ohio River Road | | Lesage | WV | 45662 | REO Broker Agreement |
| Ron Biegler | Cabin Creek Properties, Inc | 9200 W. Cross Dr., #110 | | Littleton | CO | 80123 | REO Broker Agreement |
| Rosaland Dennis | Keller Williams | 5286 NORTH ROXBORO RD | | Durham | NC | 27712 | REO Broker Agreement |
| Rosenbush, Cynthia | | 620 N IRENA | | Redondo Beach | CA | 90277 | |
| Ruben Lopez | Realty Executives | 450 S. Glendora Ave, Suite 105 | | West Covina | CA | 91790 | REO Broker Agreement |
| Rusty Graham | Coldwell Banker | 1081 N Hampton, Suite 290 | | Desoto | TX | 75115 | REO Broker Agreement |
| Sam Abajian | Abajian Properties | 2753 South Highland Drive | | Las Vegas | NV | 89109 | REO Broker Agreement |
| Sam Baird | C-21 Troope and Company | 820 E. Jackson, Suite 12 | | Willard | MO | 67581 | REO Broker Agreement |
| Samuel, Allen | Account Executive of a Hub Office | 1942 N. Diegant Lane, #89 | | Fullerton | CA | 92631 | Employment Agreement |
| SAS Institute Inc. | SAS Campus Drive | | | Cary | NC | 27513 | Master License Agreement No. 53018 |
| SAS Institute Inc. | SAS Campus Drive | | | Cary | NC | 27513 | Supplement No. 1 to Master License Agreement No. 53018 |
| SAS Institute, Inc. | SAS Campus Drive | | | Cary | NC | 27513 | Master License Agreement |
| Saxon Mortgage, Inc. | Senior VP-Capital Markets | 480 Cox Road | | Glen Allen | PA | 23060 | Warehouse Lender/EPD Claimants |
| Schoen, Christopher M. | Operations Manager, Northwest Division of the Wholesale Division | 33 Braidwood Dr. | | Hopewell Jct | NY | 12533 | Employment Agreement |
| Scott Larson | Century 21 Golden Spike Realty | 2509 Main Street | | Sunset | UT | 84015 | REO Broker Agreement |
| Scott Wynkoop | | 2110 N Meridian Street | | Indianapolis | IN | 46202 | REO Broker Agreement |
| Sean McCann | Hancock Agency Real Estate | 116 West 3rd Street | | La Junta | CO | 81050 | IT Department Contract/License/ Agreement |
| SGSCO Corporation | | | | Pass City | | | Service Agreement |
| Shirley Croth | Shirley R. Smith, Realtors, LTD | Hampton Building, 7th Floor | Emerald Avenue | Macon | | 31204 | REO Broker Agreement |
| SN Servicing Corporation | | 700 17th Street, Suite 100 | Vineville | Denver | CO | 80202 | Whole Loans |
| Softchoice Corporation | | 11444 Olympic Blvd, Suite 780 | (800) 954-1804 | Los Angeles | CA | 90064 | Volume Licensing Agreement |
| Softchoice Corporation | | 11444 Olympic Blvd, Suite 780 | (800) 954-1804 | Los Angeles | CA | 90064 | Software License Agreement |
| Softchoice Corporation | | 11444 Olympic Blvd, Suite 780 | (800) 954-1804 | Los Angeles | CA | 90064 | Software License Agreement |
| SolarWinds | | 11444 Olympic Blvd, Ste 780 | | Los Angeles | CA | 90064 | IT Department Contract/License/ Agreement |
| Specialists in Custom Software, Inc. | | 2120 Colorado Avenue, Suite 150 | Phone (310) 829-9950 | Santa Monica | CA | 60404 | Software Support Agreement |
| Specialists in Custom Software, Inc. | | Microsoft Business Solutions | One Lone Tree Road | Fargo | ND | 58104-3911 | Software Support Agreement |
| Spectrum Park I, J.V. | c/o Levy Realty Advisors, Inc. | 4501 NW 17th Way #103 | | Ft. Lauderdale | FL | 33309 | Lease re Premises: 4501 NW 17th Way, Suite 606  Ft. Lauderdale, FL 33309-3775  CC# 140 |
| St. James, Julie | Senior Vice President of Capital Markets | 18828 La Amistad Place | | Tarzana | CA | 91356 | Employment Agreement |

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 2:46:13 PM
Envelope: 1069661
Reviewer: Alexa G.

Case 8:07-bk-10765-RK    Doc 558-1    Filed 07/27/07    Entered 07/27/07 19:38:13    Desc
Exhibit A List of Rejected Agreements    Page 9 of 10

EXHIBIT A

| Name | Contact | Address | | City | State | ZIP | Agreement |
|---|---|---|---|---|---|---|---|
| Stephen Howard | Central Valley Realty | 1161 W. Robinhood Dr. | | Stockton | CA | 95207 | REO Broker Agreement |
| Sue Ann Stuart | RE/Max All Executives | 1985 East River Road, #121 | | Tucson | AZ | 85718 | REO Broker Agreement |
| Suntrust Asset Funding, LLC | Tony Atkins | 303 Peachtree Street, 23rd Floor | | Atlanta | GA | 30308 | Whole Loans |
| T. Weiss Realty Corp. | | 105 Maxess Road, Suite S131 | | Melville | NY | 11747 | Lease re Premises: 104 Maxess Road, Suite 204 Melville, NY 11747-3861 CC# 181 |
| Taleo | | 4140 Dublin Blvd | Contact - Bob Neil | Dublin | CA | 94568 | Agreement re Applicant Tracking |
| Tanwolda, Nic | Executive Vice President | 13 White Sail | | Laguna Niguel | CA | 92677 | Employment Agreement |
| Terry Parker | Best Real Estate & Property | 4101 E. Louisiana, Ste. 350 | | Denver | CO | 80246 | REO Broker Agreement |
| Terwin Advisors LLC | Karry Geddes | 45 Rockefeller Plaza, Suite 420 | | New York | NY | 10111 | Whole Loans |
| TFB IVR (Servicing # 390) | Nichola Harris | 1112 Ocean Dr., Suite 202 | | Manhattan Beach | CA | 90266 | IT Department Contract/License/ Agreement |
| The Geddes West Company & Stuart m. Brokers | Rick Granados (714) 824-4348 | 16901 Red Hill Ave, Ste. 100 | | Tustin | CA | 92780 | Dental Plan |
| The MathWorks | | PO Box 845428 | | Boston | MA | 02284-5428 | Software and Maintenance Agreement |
| The Winter Group | Vic. Calandra | 21560 Oxnard St., Suite 630 | | Woodland Hills | CA | 91367 | Whole Loans |
| TheLoanPage.com | | 11332 NE 122nd Way | 1-877-522-3401 | Kirkland | WA | 98034 | Purchase Agreement Summary Page (with Terms and Conditions attached) |
| Thomas Washington | Select Realty | 931 Hwy 80 West, Unit 226 | | Jackson | MS | 39204 | REO Broker Agreement |
| Thompson MGT's, division of Thomson Learning, Inc. | | 14624 North Scottsdale Rd. | | Scottsdale | AZ | 85254 | Master Agreement No. |
| TIC Logo Vista LP | | 5388 Bayshore Circle | | Chicago | IL | 60674 | Lease re Premises: 700 S Highway 121, Suite 175 Lewisville, TX 75067 CC# 948 |
| Timmins, Craig | | 32018 SOUTH COAST HIGH | | Laguna Beach | CA | 92651 | |
| Tom Moon | Pacific Moon Real Estate | 18377 Beach Blvd | | Huntington Beach | CA | 92648 | REO Broker Agreement |
| Tommie Addison | Addison Insurance & Realty | 1023 West Thomas | | Rocky Mount | NC | 27804 | REO Broker Agreement |
| Toneta, Reyes A. | | 1835 E HALLANDALE BEAC | #673 | Hallandale Beach | FL | 33009 | |
| TopPlain LLC | Mike Nguyen | 2222 Michelson Drive, Suite 508 | (949) 419-8128 | Irvine | CA | 92612 | Configuration Software/Maintenance and Support Agreement |
| TPG -2500 City West, L.P. | P.O. Box 203396 | Houston, TX 77216-3396 | | | | | Lease re Premises: 2500 City West Blvd., Suite #280 Houston, TX 77042 |
| Tracey Blionti | Icorgate Realtors, Inc. | 44 33 Far Hills Avenue | | Kettering | OH | 45429 | REO Broker Agreement |
| TransUnion LLC | | | | | | 60661-3614 | Data Services Agreement |
| TransUnion LLC | | 555 W. Adams St., 6th Fl. | | Chicago | IL | 60661-3614 | Agreement for Trans Union Data Services |
| TransUnion, LLC | | 555 W. Adams St., 6th Fl. | | Chicago | IL | 60661-3614 | Empirica Prescreening Agreement |
| TransUnion, LLC | | 555 W. Adams St., 6th Fl. | | Chicago | IL | 60661-3614 | Empirica Portfolio Review Agreement |
| TransUnion, LLC | | Fair, Isaac & Co., Inc. | | | | | Empirica Prescreening Agreement |
| TransUnion, LLC | | Fair, Isaac and Co. | | | | | Empirica Portfolio Review Agreement |
| UBS Real Estate Securities Inc. | Glenn McIntyre | 1285 Avenue of the Americas | | New York | NY | 10019 | Warehouse Lender/EPD Claimants |
| USRea | Todd Mobraten | 2539 Commercecentre Drive | Second Floor | Lake Forest | CA | 92630 | Servicing Agreement |
| Valeria Lee | Prudential Collins & Turner Realty | 2301 S. Irby Street | | Florence | SC | 29505 | REO Broker Agreement |
| Van Eaton | Gear. Vice Pres. Exec. Dir./Sr. Auction | 39010 Digrstorium Rd | | Asbury | NJ | 08802 | REO Broker Agreement |
| Wachovia Bank, NA | | 301 S. College Street | | Charlotte | NC | 28288-0600 | Warehouse Lender |
| Warren Adams | Security Pacific Real Estate Broker | 1707 Fair College Street | | Fair Oaks | CA | 95628 | REO Broker Agreement |
| Washington Mutual | WAMSC | 1201 Third Avenue, WMT 1706 | | Seattle | WA | 98101 | Whole Loans |
| Weinstein, Ellis B | Hub Manager of Pittsburgh Office | 92 Carleton Dr. | | Pittsburgh | PA | 15243 | Employment Agreement |
| Whale Communication | | 400 Kelby Street, 15th Floor | | Fort Lee | NJ | 07024 | Software License and Service Agreement |
| Willis, Robert | Gear.Vice Presac.Risk Management & Loan Review | 2860 E. Jackson Avenue, #23 | | Anaheim | CA | 92806 | Employment Agreement |
| WPC Management | | 7833 Walker Drive, Suite 610 | | Greenbelt | MD | 20770 | Lease re Premises: 7655 Walker Drive, Suite 350 Greenbelt, MD 20770-3212 CC# 943 |
| Zoffiro, Michael | Chief Information Officer & | Executive Vice President | | Mission Viejo | CA | 92692 | Employment Agreement |

Case Number: PC-2017-0702
Filed in Providence/Bristol County Superior Court
Submitted: 6/5/2017 Case 8:07-bk-10765-RK    Doc 558-1    Filed 07/27/07    Entered 07/27/07 19:38:13    Desc
Envelope: 1069661
Reviewer: Alexa G.
Exhibit A List of Rejected Agreements    Page 10 of 10

**EXHIBIT A**

| | | | | | |
|---|---|---|---|---|---|
| Zimmer, David | Executive Vice President, Asset Management | 210 Brookstone Dr | Princeton, NJ | 08540 | Employment Agreement |
| ZipSearch LLC | | 8760 Top Gun Street, Suite 110 | San Diego, CA | 92121 | Support and Maintenance Agreement |

30365-02\DOCS_LA:170030v1