UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHUDY HERNANDEZ, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>U.S. BANK, N.A., AS TRUSTEE FOR )<br>SASCO MORTGAGE PASS-THROUGH )<br>CERTIFICATES, SERIES 2007-BC3 and )<br>MORTGAGE ELECTRONIC )<br>REGISTRATION SYSTEMS, INC., )<br>)<br>Defendants. )<br>)<br>) | C.A. No. 1:17-cv-00316 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants U.S. Bank, N.A., as Trustee for SASCO Mortgage Pass-Through Certificates, Series 2007-BC3 ("U.S. Bank, as Trustee") and Mortgage Electronic Registration Systems, Inc. ("MERS" and collectively "Defendants") submit this memorandum in support of their motion to dismiss the amended complaint (the "Amended Complaint" or "Am. Compl.") filed by Plaintiff Rhudy Hernandez ("Plaintiff") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

INTRODUCTION

After avoiding foreclosure for more than two years by filing multiple bankruptcies after defaulting on her mortgage, Plaintiff now challenges the lawful foreclosure of her home on the grounds that: (1) the foreclosure sale violated the automatic stay in Plaintiff's bankruptcy case filed the morning of the sale; and (2) that MERS, as mortgagee, lacked authority to assign Plaintiff's mortgage because the original lender rejected an executory contract with MERS during its own, separate bankruptcy case. This Court should dismiss the Amended Complaint

because both of these theories fail as a matter of law. First, although not mentioned in the Amended Complaint, Plaintiff had two bankruptcy cases pending and dismissed in the year prior to her filing a third bankruptcy on the morning of the foreclosure sale. Under the U.S. Bankruptcy Code (the "Code"), the automatic stay did not apply, as a matter of law, to Plaintiff's third bankruptcy. Second, Plaintiff's MERS theory fails because she has not and cannot allege facts to show that MERS lacked authority to assign her mortgage. This is because rejecting an executory contract in bankruptcy does not amount to termination. Here, Plaintiff granted MERS, as nominee for the lender and lender's successors and assigns, a mortgage making MERS the mortgagee as a nominee for whoever owned the beneficial rights to Plaintiff's promissory note at any point in time. The Amended Complaint contains no allegations regarding who owned the note (or, more accurately, the beneficial rights therein) when MERS assigned the mortgage and on whose behalf MERS could act upon transfer from the lender. Plaintiff has not and cannot establish that MERS was acting for the bankrupt originator when it assigned the mortgage. Put simply, MERS had authority to assign the mortgage as a matter of settled Rhode Island law. Therefore, both of Plaintiff's legal theories fail, and this Court should dismiss the Amended Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

*Plaintiff's Loan Origination*

Plaintiff is the former owner of 200 Oaklawn Avenue, Cranston, Rhode Island (the "Property"). See Am. Compl., ¶ 5. On November 29, 2006, Plaintiff executed a note (the "Note") and obtained a loan from People's Choice Home Loans, Inc. ("People's Choice") in the principal amount of $436,000.00 (the "Loan"). See Am. Compl., ¶ 9. To secure the Loan,

---

[1] For purposes of this motion only, Defendants accept as true the factual allegations of the Complaint. Defendants, however, reserve the right to challenge those allegations at a later date.

Plaintiff granted a mortgage (the "Mortgage") on the Property in favor of MERS, acting as nominee for the original lender, People's Choice and People's Choice's successors and assigns.[2] See Am. Compl., ¶ 9, Ex. 1.

*People's Choice's Bankruptcy*

On or about March 20, 2007, People's Choice filed bankruptcy under Chapter 11 of the Code in the U.S. Bankruptcy Court for the Central District of California, case number 8:07-bk-10765. See Am. Compl., ¶ 10. On July 27, 2007, People's Choice filed a notice of rejection of various contracts and leases of personal property [DN 558] (the "Notice of Rejection"). See Am. Compl., ¶ 11, Ex. 2.[3] Exhibit A to the Notice of Rejection includes the following information:

| Creditor | Address1 | City | State | Zip |
|---|---|---|---|---|
| MERS | 13059 Collections Center Drive | Chicago | IL | 60693 |

**Description**
IT Department Contract/License/Agreement

Compl., Ex. A to Ex. 2. Based upon this limited information contained in the Notice of Rejection, Plaintiff maintains that she could not be foreclosed. Nothing in the Notice of Rejection, however, identifies the MERS contract being rejected.

*Assignment of the Mortgage*

On February 19, 2009, MERS, the original mortgagee, assigned the Mortgage to U.S. Bank, as Trustee (the "Assignment"). See Am. Compl., ¶ 14, Ex. 3. The Assignment states that MERS assigned the Mortgage to U.S. Bank, as Trustee in its capacity as the holder of Plaintiff's Mortgage. See Am. Compl., Ex. 3. Contrary to the Amended Complaint's allegations, the Assignment does not indicate that MERS acted "as nominee for People's Choice" when it

---

[2] The Complaint acknowledges MERS "as mortgagee, acting solely as nominee of Lender, People's Choice" (Am. Compl., ¶ 9) but does not acknowledge the express language of the Mortgage stating that MERS is also nominee for People's Choice's successors and assigns.

[3] It appears Plaintiff only attached Exhibit A of the Notice of Rejection to her Amended Complaint.

3

assigned the Mortgage.  See Am. Compl., ¶ 14, Ex. 3.  Indeed, under the Mortgage, MERS always acted for whoever the Note owner was at any point in time.  Thus, when MERS executed the Assignment it acted on behalf of which entity owned the Loan in 2009, not on behalf of People's Choice who originated the Loan in 2006.  The Amended Complaint fails to allege who owned the Note in 2009.

*Plaintiff's Bankruptcies*

After defaulting on the Loan, Plaintiff filed a series of voluntary bankruptcy petitions in the U.S. Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"), presumably to halt foreclosure activities by implication of the automatic stay provided under the Code.  See Am. Compl., ¶¶ 16-17 & 20.  The Amended Complaint cites to Plaintiff's third bankruptcy case (no. 1:16-bk-11556) and makes a passing reference to a second bankruptcy case through the citation to 11 U.S.C. § 362(c)(3)(A).  See Am. Compl., ¶¶ 17 & 20.  This Code section states,

> if a . . . case is field by . . . a debtor . . . and if a . . . case of the debtor was pending within the preceding 1-year period but was dismissed . . . the [automatic] stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt . . . shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

11 U.S.C. § 362(c)(3)(A).  By referencing this Code section, Plaintiff implies, without specifically alleging, that she had a prior bankruptcy case pending and dismissed within the previous year.  The Amended Complaint, however, omits material information *fatal to her claims* regarding Plaintiff's prior bankruptcy filings.

On May 18, 2015, Plaintiff filed a Chapter 13 voluntary petition, case no. 1:15-bk-11046 (the "First Bankruptcy Case").  A copy of the docket for the First Bankruptcy Case is attached

4

hereto as <u>Exhibit A</u>.[4]  On October 27, 2015, the Bankruptcy Court dismissed the First Bankruptcy Case and closed it on December 10, 2015.  <u>See</u> Ex. A.

On January 19, 2016, Plaintiff filed another Chapter 13 voluntary petition, case no. 1:16-bk-10091 (the "Second Bankruptcy Case").  A copy of the docket for the Second Bankruptcy Case is attached hereto as <u>Exhibit B</u>.  On January 29, 2016, the Bankruptcy Court dismissed the Second Bankruptcy Case for Plaintiff's failure to comply with its order to file missing documents.  <u>See</u> Ex. B.  On February 16, 2016, the Court closed that case.  <u>See</u> Ex. B.

On September 9, 2016, Plaintiff filed a Chapter 7 voluntary petition, case no. 1:16-bk-11556 (the "Third Bankruptcy Case").  A copy of the docket for the Third Bankruptcy Case is attached hereto as <u>Exhibit C</u>.  On September 20, 2016, the Bankruptcy Court dismissed the Third Bankruptcy Case for Plaintiff's failure to comply with an order to file missing documents.  <u>See</u> Ex. C.  On October 6, 2016, the Bankruptcy Court closed the case.  <u>See</u> Ex. C.

Based on this bankruptcy filing history, at the time of the filing of the Third Bankruptcy Case, Plaintiff had three bankruptcy cases pending during the prior year.

*The Foreclosure*

In July 2016, following Plaintiff's uncured default, U.S. Bank, as Trustee initiated foreclosure proceedings.  <u>See</u> Am. Compl., ¶ 16.  On the morning of the duly noticed foreclosure sale, Plaintiff filed the Third Bankruptcy Case.  <u>See</u> Am. Compl., ¶¶ 16-17; Ex. C.  The foreclosure sale took place as scheduled.  <u>See</u> Am. Compl., ¶ 18.

---

[4] The Court may consider matters of public record, including documents from prior adjudications in resolving a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Giragosian v. Ryan</u>, 547 F.3d 59, 66 (1st Cir. 2008) (citing <u>In re Colonial Mortgage</u>, 324 F.3d 12, 15–16 (1st Cir. 2003); <u>Boateng v. InterAmerican Univ., Inc.</u>, 210 F.3d 56, 60 (1st Cir.2000)).

5

ARGUMENT & AUTHORITY

**I.     RULE 12(b)(6) STANDARD.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. The United States Supreme Court clarified and, seemingly heightened, the Rule 8 pleading requirements when it expressly rejected the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957). See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007). "The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard. Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1955 (internal citations omitted). Facts that are conclusively contradicted by a plaintiff's concessions or otherwise should not be credited. See Soto-Negron v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003) (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir.1987)). Plaintiff's Amended Complaint, even if its allegations are accepted as true, fails to state a claim upon which relief may be granted.

**II.     THE AUTOMATIC STAY DID NOT APPLY TO PLAINTIFF'S THIRD BANKRUPTCY CASE BECAUSE PLAINTIFF HAD THREE CASES PENDING IN THE PRIOR YEAR.**

Plaintiff's claim that the foreclosure sale violated the automatic stay fails as a matter of law because the automatic stay never went into effect due to Plaintiff's two prior bankruptcy cases, pending and dismissed during the previous year.  Under 11 U.S.C. § 362(c)(4)(A)(i),

> if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case[.]

Plaintiff attempts to circumvent the limitations of the Code by failing to disclose each of her prior bankruptcy cases and by erroneously referencing 11 U.S.C. § 362(c)(3)(A), which is triggered when a debtor files a subsequent bankruptcy case within one year after a previous case was pending and dismissed.  See Am. Compl., ¶¶ 20 & 33.  This section allows for the automatic stay to go into effect for 30 days.  See 11 U.S.C. § 362(c)(3)(A).

But, 11 U.S.C. § 362(c)(3)(A) did not apply because Plaintiff had two (not one) bankruptcy cases pending and dismissed in the year prior to filing the Third Bankruptcy Case. As outlined above, the Bankruptcy Court dismissed the First Bankruptcy Case on October 27, 2015 and the Second Bankruptcy Case on January 29, 2016.  See Exs. A & B.  When Plaintiff filed the Third Bankruptcy Case on September 9, 2016, it was the third case within one year of the dismissal of the First and Second Bankruptcy Cases.   Thus, the filing of the Third Bankruptcy Case triggered 11 U.S.C. § 362(c)(4)(A)(i), not 11 U.S.C. § 362(c)(3)(A).  Since, the automatic stay did not go into effect under Section 362(c)(4)(A)(i), the foreclosure sale could not have violated the automatic stay, and this claim should be dismissed.

### III. PEOPLE'S CHOICE'S PURPORTED EXECUTORY CONTRACT REJECTION IN BANKRUPTCY DID NOT TERMINATE MERS' RIGHTS UNDER THE MORTGAGE.

People's Choice's alleged rejection of its agreement with MERS has no bearing on whether the Mortgage remains an enforceable lien on the Property because rejection under 11 U.S.C. § 365(g) does not terminate a contract or sever the relationship between parties.[5] "It does not cause a contract magically to vanish." In re The Ground Round, Inc., 335 B.R. 253, 261 (B.A.P. 1st Cir. 2005), aff'd, 482 F.3d 15 (1st Cir. 2007) (quoting Sir Speedy, Inc. v. Morse, 256 B.R. 657, 659 (D. Mass. 2000)). Rejection simply constitutes a breach of the agreement, creating a potential claim for the non-debtor in bankruptcy and preventing the non-debtor from compelling the debtor to perform under the contract unless allowed by state law. See In re The Ground Round, 335 B.R. at 261 (citations omitted). "***Rejection does not cancel, repudiate, or terminate contracts*** . . . . [T]he rights and obligations of the parties remain intact after a rejection because '***rejection does not change the substantive rights of the parties to the contract***, but merely means the bankruptcy estate itself will not become a party to it.'" Id. (citations omitted) (emphasis added).

Here, the Notice of Rejection did not terminate People's Choice's relationship with MERS as alleged in the Amended Complaint. See Am. Compl., ¶¶ 12-13. To the contrary, the contract was not terminated and the rights of the parties to the rejected MERS contract listed in Exhibit A to the Notice of Rejection (whatever that may be) remained unchanged. See In re The Ground Round, 335 B.R. at 261. Accordingly, People's Choice's (implied) breach through rejection did not prevent MERS, the mortgagee, from assigning the Mortgage on behalf of People's Choice's successors or assigns. At most, the rejection may have prevented People's

---

[5] Plaintiff fails to identify the specific executory contract at issue.

Choice from being compelled to perform; an issue that Plaintiff does not raise. Therefore, Plaintiff's conclusory and wholly unsupported allegation that People's Choice's rejection of its MERS agreement was a termination also fails as a matter of law. But, the problems with Plaintiff's legal theory do not end there.

Even if Plaintiff could establish that People's Choice rejected its MERS membership agreement, Courts have routinely rejected the theory that a lender's rejection of its MERS membership agreement under 11 U.S.C. § 365(g) prevents MERS from assigning mortgages. The U.S. District Court for the Southern District of Texas, explained why a lender's rejection does not prohibit MERS from later assigning a mortgage in Khan v. Wells Fargo Bank, N.A.:

> Plaintiff asserts that any assignment of the mortgage after New Century filed for bankruptcy in 2007 is void because, in bankruptcy, New Century rejected its contracts with MERS to the extent those contracts were "executory." Plaintiff's contentions, however, misconstrue MERS' interests in and role with regard to the mortgage. MERS obtained its rights under the Deed of Trust in 2006, well before New Century's bankruptcy. From 2006 onward, MERS held "legal title to the interests granted by Borrower in this Security Instrument." *As the holder of legal title—and thus the mortgagee of record—MERS had the authority, irrespective of New Century's legal status, to assign its interest in the mortgage to other entities*. The Deed of Trust also presumes that MERS could assign the mortgage to others. Plaintiff points to a notice filed in the bankruptcy court, dated March 19, 2008, which references an order granting New Century the right to reject its executory contract with MERS, which she appears to contend severs any ties between New Century and MERS and, as a result, prohibits MERS from assigning any of New Century's mortgages. *The bankruptcy court's order does not divest MERS of interests it previously acquired with regard to properties on which New Century made loans as to which MERS was nominee prior to New Century's bankruptcy*. Rejection of executory contracts means that the debtor (New Century) need not continue to perform under the contract, but does not impact prior completed acts under the contract.

No. CIV.A. H-12-1116, 2014 WL 200492, at *8 (S.D. Tex. Jan. 17, 2014) (internal citations omitted) (emphasis added); see Trang v. Bean, 600 F. App'x 191, 194 (5th Cir. 2015) ("MERS obtained its right to assign the Deed of Trust when the Deed of Trust was executed, in 2008.

9

That right was independent of any unfulfilled obligations on the part of TBW. It therefore was not 'undo[ne] or revers[ed]' by TBW's rejection of its executory contracts in bankruptcy."); Jimenez v. Deutsche Bank Nat'l Trust Co., No. SA-11-CA-1110-DAE, 2013 WL 12100556, at *14 (W.D. Tex. Mar. 21, 2013) report and recommendation adopted, No. SA-11-CV-01110-DAE, 2013 WL 12100577 (W.D. Tex. Apr. 17, 2013), aff'd sub nom. Jimenez v. Deutsche Bank Nat. Trust Co., 552 F. App'x 379 (5th Cir. 2014) (rejecting same theory as speculative and not supported by bankruptcy law, "[a]s Jimenez does not present contrary authority or evidence to show New Castle terminated (not merely rejected) its executory contracts with MERS, he fails to show MERS did not have authority to execute the transfer of lien to the Bank."); Echezona, 2012 WL 12872909, at *11 (dismissing wrongful foreclosure claim on the basis that "[p]laintiff alleges that the assignments were invalid because MERS no longer had authority to act as nominee for Fieldstone once the Lender filed for bankruptcy and rejected its executory contracts with Wells Fargo, MERS and US Bank."); In re Marron, No. 10-45395-MSH, 2011 WL 3800040, at *3 (Bankr. D. Mass. Aug. 29, 2011) (finding that rejection of MERS contract under 11 U.S.C. § 365(g) was not evidence that lender terminated its MERS membership agreement or that it was no longer a MERS member).

MERS obtained legal title and its rights as mortgagee on November 29, 2006, well before People's Choice filed the Notice of Rejection on March 20, 2007. As explained above, nothing in the Notice of Rejection divested MERS of its previously acquired legal interest in the Loan. If anything, the Notice of Rejection simply means that People's Choice no longer had to perform under the agreement. Plaintiff's citation to and reliance upon the Notice of Rejection does not support a viable legal theory because that document does not demonstrate a termination of any

10

rights MERS previously obtained in the Mortgage. For these reasons, Plaintiff's theory fails and the Amended Complaint should be dismissed.

**IV.     MERS WAS THE MORTGAGEE AND HAD THE RIGHT TO ASSIGN PLAINTIFF'S MORTGAGE.**

Even if Plaintiff could somehow establish that People Choice terminated its relationship with MERS (which she has not), her theory would still fail because MERS would retain its right to assign the Mortgage on behalf of a subsequent note owner. Plaintiff's claims challenging MERS's Assignment omit material facts readily ascertainable in the Mortgage and the Assignment. The Mortgage names MERS the mortgagee as nominee for People's Choice (the original lender) and its (the original lender's) successors and assigns. Contrary to Plaintiff's allegations, the MERS Mortgage Assignment does not state that MERS was acting as nominee for People's Choice. See Am. Compl., Exs. 1 & 3. Indeed, MERS could only act as nominee for whichever entity owned the Note at any given point in time. The Supreme Court of Rhode Island has accepted MERS' ability to hold and assign mortgage liens and explained that it "reside[s] comfortably within the law of [Rhode Island]." See Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1088 (R.I. 2013) (citing Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 292 (1st Cir. 2013)). Under Rhode Island law, a lender retains equitable title to a mortgage by virtue of its ownership of the note and may pass its equitable interest to each of its successors and assigns. See Lister v. Bank of Am., N.A., 8 F. Supp. 3d 74, 83 (D.R.I. 2014), aff'd on other grounds, 790 F.3d 20 (1st Cir. 2015) (quoting Bucci, 68 A.3d at 1088). The mortgage follows the note - "the holder of the legal title to the mortgage-MERS-always has acted as an agent of the owner of the equitable title." Id.

In the Amended Complaint, Plaintiff makes no allegations regarding who held the Note or equitable interest in the Mortgage. Therefore, Plaintiff does not and cannot allege that MERS

11

lacked authority to act on behalf of any of People's Choice's successors or assigns. See Echezona v. Wells Fargo, No. 1:12-CV-00254-ODE-JFK, 2012 WL 12872909, at *11-12 (recommending dismissal of complaint because plaintiff alleged no facts that showed MERS no longer had authority to assign mortgage on behalf of lender's successors and assigns). As nominee for a lender's successors and assigns, MERS acts as an agent for the note owner and can assign a mortgage at the behest of the note owner. See Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423, 429 (D. Mass. 2011) ("a mortgagee has authority to assign a mortgage because the mortgagee retains title to the mortgage and has a fiduciary duty to act on behalf of a note owner, and the right to assign is consistent with such duty."); Lindsay v. Wells Fargo Bank, N.A., No. 12-11714-PBS, 2013 WL 5010977, at *7 (D. Mass. Sept. 11, 2013) ("MERS is authorized to act as an agent for each note holder during successive transfers of a mortgage due to its nominee status.").

What People's Choice did or did not do in bankruptcy with respect to its contract with MERS has no impact on MERS' authority to assign the Mortgage after People's Choice transferred the equitable interest in the Loan (the Note) because from that point on, MERS no longer acted for People's Choice. Rather, MERS was acting for People's Choice's successors or assigns. Indeed, "[a] lender's bankruptcy does not affect the ability of MERS to assign a mortgage." In re Marron, 485 B.R. 485, 489 (Bankr. D. Mass. 2012). No act by People's Choice can affect its successors and assigns or MERS acting nominee for those successors and assigns once People's Choice no longer possesses an equitable interest. In fact, even dissolution of the original lender would not prevent a successor from obtaining an assignment of mortgage from MERS acting as mortgagee and nominee for that lender's successors and assigns. See In re Marron, 455 B.R. 1, 7 (Bankr. D. Mass. 2011) (finding that the foreclosing entity established that

it was the proper holder of the mortgage because MERS, as the mortgagee, holds the Mortgage in trust for the noteholder despite the bankruptcy and dissolution of the original lender); Lindsay, 2013 WL 5010977 at *11-14 ("A bankruptcy entity's dissolution does not invalidate a subsequent assignment of a mortgage from MERS, acting as mortgagee and nominee for the original and subsequently bankrupt lender . . . "); Kiah v. Aurora Loan Services, LLC., No. 10-40161-FDS, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) (rejecting plaintiff's argument that MERS could not assign the mortgage from the original bankrupt lender).

Plaintiff's failure to challenge, or even allege any facts regarding, the transfer of the Note are fatal to her claims. By not making any allegations regarding the transfer of the Note, Plaintiff cannot prevail on her challenge to the Assignment. See Lindsay, 2013 WL 5010977 at *12 (citing Kiah, 2011 WL 841282). "[T]he holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage . . . " U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 652 (2011). MERS may remain the mortgagee holding legal title as nominee for People's Choice's successors and assigns. See Lindsay at *12 (explaining that mortgage assignments by MERS to lender's successor or assign are valid after transfer of beneficial interest). Plaintiff alleges no facts that would impact or prohibit MERS from acting on behalf of a successor or assign of People's Choice after it obtained the beneficial interest in Plaintiff's Loan. She does not allege that People's Choice held the Note when MERS assigned the Mortgage, and contrary to her allegations, the Assignment is simply from MERS to U.S. Bank, as Trustee. See Am. Compl., ¶ 14, Ex. 3. The Assignment does not indicate that MERS acted as nominee for People's Choice when it assigned the Mortgage. See Am. Compl., Ex. 3. For these reasons, Plaintiff's theory fails because the

13

allegations in the Amended Complaint do not provide any basis to prevent MERS from assigning the Mortgage on behalf of a successor or assign of People's Choice.

## CONCLUSION

For the foregoing reasons Plaintiff has failed to establish entitlement to declaratory judgment or quiet title and MERS and U.S. Bank, as Trustee hereby request that the Court (1) grant their motion, (2) dismiss the Amended Complaint with prejudice, and (3) grant such other relief as the Court deems just and equitable.

Respectfully submitted,

Mortgage Electronic Registration Systems, Inc. and
U.S. Bank, N.A., as Trustee for SASCO Mortgage Pass-Through Certificates, Series 2007-BC3,

By their counsel,

*/s/ David E. Fialkow*
David. E. Fialkow (Bar No. 9318)
david.fialkow@klgates.com
Edward J. Mikolinski (Bar No. 9035)
edward.mikolinski@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Telephone:  +1 617 261 3100

Dated:  July 12, 2017                                             Facsimile:  +1 617 261 3175

## CERTIFICATE OF SERVICE

I, David E. Fialkow certify that the foregoing filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 12th day of July 2017.

*/s/ David E. Fialkow*
David E. Fialkow