UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHUDY HERNANDEZ,<br>    Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC., and<br>U.S. BANK, N.A. as Trustee for SASCO<br>MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2007-BC3,<br>    Defendants. | :<br>:<br>:<br>:    C.A. No. 17-316WES<br>:<br>:<br>:<br>:<br>:<br>: |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Pending before the Court is the motion to dismiss of Defendant U.S. Bank, N.A., as Trustee for Sasco Mortgage Pass-Through Certificates, Series 2007-BC3 ("U.S. Bank") and Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). ECF No. 5. U.S. Bank and MERS challenge the viability of the complaint of Plaintiff Rhudy Hernandez arising from her claim that the September 9, 2016, foreclosure sale of her property at 200 Oaklawn Avenue, Cranston, Rhode Island, ("property") was void and that she is still the true owner. In addition to her opposition to the motion to dismiss, Plaintiff has also moved to amend her complaint. ECF No. 9. Both motions have been referred to me, the motion to dismiss for report and recommendation and the motion to amend for determination. 28 U.S.C. § 636(b)(1). Based on the analysis that follows, I find that Plaintiff's claim that U.S. Bank's foreclosure sale was void because MERS's assignment of the mortgage to U.S. Bank was a nullity fails both as a matter of law and because the complaint, even if read together with the new language in the proposed second amended complaint, does not contain facts sufficiently plausible to state a claim.

Accordingly, by text order issued today, the Court has denied the motion to amend as futile. I recommend that the Court grant the motion to dismiss.

I.     **BACKGROUND**[1]

On November 29, 2006, Plaintiff executed a note reflecting a loan in the amount of $436,000 from People's Choice Home Loans, Inc. ("People's"). ECF No. 1-1 ¶ 9. To secure the loan, she also executed a mortgage on the property. ECF No. 1-1 ¶ 9 & Ex. 1. According to the express terms of the mortgage, a copy of which is attached to the complaint (Ex. 1, ECF No. 1-1 at 15-36), MERS, acting "solely as a nominee for Lender (People's) and Lender's successors and assigns," "is the mortgagee under this Security Instrument." ECF No. 1-1 at 17. It is MERS, as mortgagee, to which Plaintiff did "hereby mortgage grant and convey" the property. ECF No. 1-1 at 19. Significantly, the body of complaint is inconsistent with the language of the attached mortgage; the complaint alleges that MERS was mortgagee, "acting solely as nominee of Lender, People's," and omits the mortgage language stating that MERS was also acting for People's successors and assigns. ECF No. 1-1 ¶ 9.

On March 7, 2007, Plaintiff's lender, People's, filed for bankruptcy under Chapter 11 in the Central District of California. ECF No. 1-1 ¶ 10. In an allegation contained only in the proposed second amended complaint, pleading on "good information and belief, subject to further discovery," Plaintiff alleges that her note owed to People's and her mortgage held by MERS "became part of the bankruptcy estate" by operation of People's bankruptcy filing. ECF

---

[1] This background is largely drawn from the amended complaint ("complaint") and its attachments. ECF No. 1-1. As noted in the text, I have also considered the pertinent new language in the proposed second amended complaint to determine whether granting the motion to amend would alter the outcome of the Court's determination of this Fed. R. Civ. P. 12(b)(6) motion. ECF No. 9-1.

No. 9-1 ¶ 29.[2] Several months later, in connection with its bankruptcy, People's filed a "notice of rejection of various contracts." ECF No. 1-1 ¶ 11. A copy of this notice is attached to the complaint. Ex. 3, ECF No. 1-1 at 40-50. Among the listed contracts that are rejected is "IT Department Contract/License/Agreement" with MERS. ECF No. 1-1 at 47. With no facts to form the foundation for the conclusion, but citing 11 U.S.C. § 365(g),[3] the complaint alleges that this "notice of rejection," which relates to "the executory contract with MERS," amounted to a breach that, as a matter of law, resulted in the termination of People's entire relationship with MERS. ECF No. 1-1 ¶¶ 12-13. The complaint concludes that, by operation of the termination of People's relationship with MERS, MERS lost the authority to assign Plaintiff's mortgage. ECF No. 1-1 ¶ 13. Otherwise, the complaint fails to support the conclusion that the § 365 rejection of an executory IT department contract between People's and MERS nullified MERS's authority to act as mortgagee for People's or its successors and assigns arising from a mortgage instrument that was in existence four months prior to People's July 27, 2007, bankruptcy filing.

On February 19, 2009, MERS assigned the mortgage to Defendant U.S. Bank. ECF No. 1-1 ¶14. The complaint alleges that, in so doing, MERS was "acting solely as nominee for People's," again omitting the fact stated in the attached instrument that the mortgage also clothed MERS with the authority to assign the mortgage on behalf of People's successors and assigns. ECF No. 1-1 ¶ 14. Citing the Rhode Island Supreme Court's decision in DiLibero v. Mortgage Electronic Registration Systems, Inc., 108 A.3d 1013 (R.I. 2015), the complaint concludes that this assignment was void *ab initio* because MERS lacked the authority to assign, and had nothing

---

[2] Due to a mix-up in the numbering of the paragraphs in the second amended complaint, there are two different paragraphs numbered "29." The pertinent new language appears in the first paragraph 29, on page 4 of the proposed pleading. ECF No. 9-1 at 4.

[3] Section 365 of the Bankruptcy Code addresses the ability of a Chapter 11 trustee to assume or reject executory contracts or unexpired leases which the debtor has an ongoing or future duty to perform. 11 U.S.C. § 365(a). The filing of a rejection notice amounts to a breach of the contract or lease. 11 U.S.C. § 365(g).

to assign, due to People's § 365 filing of a rejection-of-executory-contract notice listing "IT Department Contract/License/Agreement" with MERS. ECF No. 1-1 ¶ 15.

In July 2016, based on Plaintiff's uncured default, U.S. Bank initiated foreclosure proceedings; the property was sold at a mortgagee's foreclosure sale on September 9, 2016. ECF No. 1-1 ¶¶ 16, 18. In the year of the foreclosure sale, Plaintiff was the debtor in three bankruptcy proceedings, the third of which was filed just hours before the property was sold at foreclosure. ECF No. 1-1 ¶ 17 (Plaintiff's third bankruptcy filing); ECF Nos. 5-2 and 5-3 (Plaintiff's first and second bankruptcy filings).[4]

On February 13, 2017, Plaintiff sued U.S. Bank in Providence County Superior Court, challenging the foreclosure sale. On June 8, 2017, Plaintiff amended her state court pleading, adding MERS as a defendant. This complaint (the current version) alleges that (1) the foreclosure sale was in violation of R.I. Gen. Laws § 34-11-22 because MERS's assignment to U.S. Bank was void *ab initio* by reason of People's bankruptcy, including its filing of a § 365 rejection notice listing "IT Department Contract/License/Agreement" with MERS; and (2) the sale was in violation of the automatic stay arising from Plaintiff's bankruptcy filing on the morning of the foreclosure sale.

After the case was removed to this Court, U.S. Bank and MERS moved to dismiss, challenging the legal foundation for the propositions that MERS lacked the power to assign the mortgage and that the automatic stay barred the sale. Plaintiff's motion to amend followed; it seeks to augment the pleading by providing more detail about Plaintiff's bankruptcy filings and by adding the conclusion that the note and mortgage are part of the People's bankruptcy estate. At the hearing on the motions, Plaintiff conceded that the foreclosure sale was not barred by the

---

[4] Plaintiff does not dispute the authenticity or accuracy of these public records, which may be considered in connection with a Fed. R. Civ. P. 12(b)(6) motion. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

automatic stay because of the pendency of Plaintiff's two prior bankruptcies in the one-year period preceding her third bankruptcy filing; in such circumstances, the automatic stay does not issue pursuant to 11 U.S.C. § 362(c)(4)(A), as further explicated in In re Jumpp, 356 B.R. 789, 795-96 (B.A.P. 1st Cir. 2006). Accordingly, she agreed that the viability of her claim depends on whether she has alleged facts sufficient to support her allegation that the MERS assignment to U.S. Bank is a nullity. Also at the hearing, she conceded, and Defendants agreed, that her proposed second amended complaint does not require additional briefing because it merely clarifies but does not cure the factual and legal deficiencies challenged by Defendants. Thus, she effectively acquiesced to the proposition that, if Defendants are right that her complaint fails to state a claim, her motion to amend is futile.

## II.    STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept as true all plausible factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the Court is guided by the now familiar standard requiring enough facts to state a claim for relief that is plausible: if "the plaintiffs [can]not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal continues:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

5

Id. (internal citations omitted). In performing the plausibility analysis, exhibits attached to the complaint (here, the mortgage, the assignment and People's notice of rejection of executory contracts) are "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Further, in the event that the "written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000).

The United States Supreme Court wrought a sea change in the Fed. R. Civ. P. 12(b)(6) analysis when it abandoned the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41, 45-6 (1957) ("the Conley standard"). Twombly, 550 U.S. at 563; Iqbal, 556 U.S. at 678. ("The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard."). While the Rhode Island Supreme Court has not adopted the Twombly/Iqbal standard, instead adhering to the Conley standard, Chhun v. Mortg. Elec. Registration Sys., Inc., 84 A.3d 419, 422-23 (R.I. 2014), federal courts must apply the Twombly/Iqbal standard even in cases where state law controls the substantive claims. Era v. Morton Cmty. Bank, 8 F. Supp. 3d 66, 69 (D.R.I. 2014). This includes challenges to mortgage foreclosures which are removed from state court. Pemental v. Bank of New York Mellon, C.A. No. 16-483S, 2017 WL 3279015, at *4 (D.R.I. May 10, 2017), adopted, 2017 WL 3278872 (D.R.I. Aug. 1, 2017).

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleadings by leave of court or by written consent of the adverse party; "the court should freely give leave when justice so requires." See Foman v. Davis, 371 U.S. 178 (1962). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant

6

the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id., 371 U.S. at 182.  Because of the discrepancy between the Twombly/Iqbal standard used in federal court and the Conley standard still applicable in state court, this Court has been even more liberal in permitting plaintiffs in removed cases to amend to align with the stricter federal standard, as long as the additional facts render the pleading plausible.  See Reilly v. Cox Enters., Inc., C.A. No. 13-785S, 2014 WL 4473772, at *9 (D.R.I. Apr. 16, 2014).  Nevertheless, leave to amend should be denied if the proposed amendment would be futile, in that the amendment would not render the complaint any more likely to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001); Ferreira v. City of Pawtucket, 365 F. Supp. 2d 215, 216 (D.R.I. 2004).  Put differently, merely adding facts or legal theories is insufficient, unless those facts or theories can cure the legal deficiencies. Finnern v. Sunday River Skiway Corp., 984 F.2d 530, 536 (1st Cir. 1993).  If the additions cannot fix the problems, the amendment should be denied as futile.  Id.; Rife v. One West Bank, F.S.B., No. 16-1305, slip op. at 6-7 (1st Cir. Sept. 29, 2017) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

### III.     LAW AND ANALYSIS

Relying on the Rhode Island Supreme Court's DiLibero decision, 108 A.3d 1013, Plaintiff argues that her complaint is sufficient to support her contention that People's 2007 bankruptcy and its filing of the notice of rejection of executory contracts breached all of People's contracts with MERS, terminated the parties' relationship and divested MERS of the authority to act as People's nominee in any way, including to exercise its authority to assign Plaintiff's mortgage, acting either for People's or for People's successors and assigns.  Because this

argument is legally flawed and not plausible even if the facts (as opposed to the legal conclusions) pled in the complaint and the proposed amended complaint are assumed to be true, I recommend that the Court grant the motion to dismiss.

DiLibero involves similar facts to those in issue here. DiLibero's plaintiff executed a note payable to New Century Mortgage Corporation ("New Century") and a mortgage naming MERS "as nominee for Lender and Lender's successors and assigns," which is the same language that is in Plaintiff's mortgage. Id. at 1014. Four months later, New Century filed for bankruptcy; in connection with the bankruptcy proceeding, it filed a § 365 notice of rejection of executory contracts, apparently including its membership agreement with MERS, which is the basis for its status as a MERS member. Id. Despite the bankruptcy filing, MERS assigned the mortgage to an entity that assigned it again. Id. at 1015. In 2011, the property was sold in foreclosure. Id. The DiLibero plaintiff argued that both mortgage assignments were void because MERS was stripped of its status as mortgagee by operation of New Century's filing of the notice of rejection of its membership agreement with MERS. Id. at 1016-17.

In the Superior Court, Justice Rubine cited the Conley standard, but, as the Rhode Island Supreme Court found, actually deployed the Twombly/Iqbal standard. Id. at 1016. Based on the latter, stricter standard, the Superior Court held that the plaintiff had failed to plead facts sufficient to show that MERS lacked the authority to foreclose or to assign the right to foreclose. DiLibero v. Mortg. Elec. Registration Sys., Inc., No. PC 2011-4645, 2012 WL 4507551, at *5 (R.I. Super. Oct. 1, 2012). The Rhode Island Supreme Court vacated this decision, holding that the trial justice had erred in applying the Twombly/Iqbal standard to a motion to dismiss under Rhode Island law. DiLibero, 108 A.3d at 1016. Instead, analyzing the complaint with the "any conceivable set of facts" Conley standard, id. at 1015, the court accepted as true the complaint's

conclusory allegation that the legal effect of the notice of rejection filed in New Century's federal bankruptcy pursuant to 11 U.S.C. § 365(g) was to terminate New Century's membership in MERS, thereby retroactively terminating MERS's ability to assign existing mortgages. Id. at 1017. Accordingly, DiLibero holds, the complaint adequately stated a claim for relief. Id.

At the hearing before me, all parties concurred: if DiLibero is controlling or strongly persuasive authority for this Court, Defendants' motion to dismiss should be denied.

Before taking a dive into DiLibero, I pause for a brief detour to review mortgage-law basics, as applicable to the facts of this case. The starting point is the now well-settled principle that MERS's role as mortgagee of record and custodian of the legal interest as nominee for the member-noteholder, together with the member-noteholder's role as owner of the beneficial interest in the loan, both "reside comfortably within the law of [Rhode Island]." Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1088 (R.I. 2013) (citing Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013)). Also important is that Plaintiff's mortgage expressly and plainly conferred on MERS the power to act as mortgagee not just for People's, but also for People's "successors and assigns." ECF No. 1-1 at 17. Thus, whether People's successor or assignee was its bankruptcy estate as Plaintiff claims, or another holder, does not matter. MERS had the authority to assign for the benefit of that successor or assignee, whoever it might be. Lindsay v. Wells Fargo Bank, N.A., C.A. No. 12-11714-PBS, 2013 WL 5010977, at *13 (D. Mass. Sept. 11, 2013) ("Until MERS assigned the mortgage to defendant in 2011, MERS retained legal title as a successor and assignee of [bankrupt lender] notwithstanding the 2007 bankruptcy."). As the First Circuit has explained, "bankruptcy law allows a debtor in possession to continue operating in the normal course of business . . . ." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 282 (1st Cir. 2013) (rejecting mortgagor's argument that lender's bankruptcy

prior to mortgage assignment voided assignment).  If the analysis were to stop here, the Court must find that MERS was well within the scope of its authority under the mortgage to assign it to U.S. Bank for the benefit of People's successor or assignee.  Lindsay, 2013 WL 5010977, at *12 ("A bankrupt entity's dissolution does not invalidate a subsequent assignment of a mortgage from MERS, acting as mortgagee and nominee for the original and subsequently bankrupt lender and lender's successors and assigns"); Kiah v. Aurora Loan Servs., LLC, C.A. No. 10-40161-FDS, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) (dissolution of lender following bankruptcy has no legal effect on viability of mortgage assignment by MERS acting for lender's "successors and assigns").

DiLibero introduces a new element – the court's acceptance as true of the legal conclusion that the § 365 notice of rejection filed in People's Chapter 11 bankruptcy stripped MERS of its standing as a mortgagee and its corollary power of assignment.  If applied to this case, this holding would result in the determination that Plaintiff's complaint is sufficient to state a claim.  For the reasons that follow, this Court should not be guided by DiLibero.

For starters, this Court is required to apply the Twombly/Iqbal standard, rather than the Conley standard used in DiLibero.  Era, 8 F. Supp. 3d at 69.  When the Superior Court reviewed the DiLibero complaint and erroneously applied the federal standard, the pleading was found to be insufficient.  By contrast, when the Rhode Island Supreme Court considered the pleading in light of its holding that the complaint's key allegation – that the § 365 notice of rejection terminated New Century's MERS's membership,[5] thus "prohibiting MERS from continuing to

---

[5] An independent reason why DiLibero is not persuasive precedent is the apparent distinction between the contracts rejected in DiLibero compared with those rejected here.  In DiLibero, the Rhode Island Supreme Court describes the rejected contract as the agreement covering New Century's membership in MERS.  108 A.3d at 1017.  In the case before the Court, the attachment to the complaint describes only "IT Department Contract/License/Agreement."  ECF No. 1-1 at 47.  Thus, the predicate to Plaintiff's legal conclusion that the § 365 notice of rejection prohibited MERS from assigning the mortgage lacks plausible support because there is nothing permitting the inference that People's rejected its MERS membership.  This deficit in Plaintiff's complaint is secondary to the primary (and fatal)

10

act as its nominee" – must be accepted as true, the motion to dismiss was denied. See 108 A.3d at 1017. Similarly, in the present case, the only pertinent fact is that People's filed a § 365 notice of rejection listing the "IT Department Contract/License/Agreement" with MERS. Otherwise, Plaintiff's allegation that the assignment is a nullity is based on the legal effect of the § 365 filing. Pursuant to Twombly/Iqbal, this is a proposition that supports the complaint if it is grounded in a correct interpretation of applicable law, but which the Court is not obliged to accept as true. Iqbal, 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Turning to that question of law, I conclude that Plaintiff's complaint fails because DiLibero rests on an erroneous interpretation of the operative section of the Bankruptcy Code, 11 U.S.C. § 365(g). DiLibero found that the filing of a notice of rejection not only breaches the forward-looking contracts listed in the notice, but also causes the bankrupt entity's "relationship with MERS [to be] terminated"; this in turn results in "the subsequent assignment of the mortgage executed by MERS . . . [to be] void *ab initio* because the assignor, MERS, had nothing to assign." 108 A.3d at 1017. In so holding, DiLibero ignored the First Circuit's controlling decision, which holds that rejection of a contract pursuant to § 365(g) does not result in the termination of that contract. In re The Ground Round, Inc., 335 B.R. 253, 261 (B.A.P. 1st Cir. 2005), aff'd, 482 F.3d 15 (1st Cir. 2007); see Sir Speedy, Inc. v. Morse, 256 B.R. 657, 659 (D. Mass. 2000) (§ 365 rejection "does not cause a contract to magically vanish"). Section 365(g) rejection constitutes a breach as of the petition date, but the rights and obligations of the parties remain intact because rejection does not change the substantive rights of the parties to the

---

failure to plead plausible facts permitting the inference that the forward-looking rejection of any executory contract with MERS resulted in a prohibition barring MERS from exercising its right to assign a pre-existing mortgage on behalf of a successor or assignee of People's.

11

contract.  Ground Round, 335 B.R. at 261.  The rejection merely means that the bankruptcy estate itself will not become a party to the contract.  Id.; see Jimenez v. Deutsche Bank Nat'l Tr. Co., No. SA-11-CA-1110-DAE, 2013 WL 12100556, at *14 (W.D. Tex. Mar. 21, 2013) ("Fifth Circuit has explained that § 365(g) speaks only in terms of 'breach.'  The statute does not invalidate the contract, or treat the contract as if it did not exist.") (citing In re Cont'l Airlines, 981 F.2d 1450, 1459 (5th Cir. 1993)), adopted, 2013 WL 12100577 (W.D. Tex. Apr. 17, 2013), aff'd, 552 F. App'x 379 (5th Cir. 2014).

      Based on these principles of federal law, the federal cases addressing the impact of the bankruptcy of the lender bank on MERS's authority to assign a pre-existing mortgage consistently and uniformly find that MERS retains the authority to assign on behalf of the lender's successors and assigns, despite the bankrupt lender's filing of a rejection of any and all executory contracts with MERS under § 365.  For example, in Khan v. Wells Fargo Bank, N.A., C.A. No. H-12-1116, 2014 WL 200492, *1 (S.D. Tex. Jan. 17, 2014), the mortgagor obtained a mortgage loan from New Century, with MERS as nominee for New Century and its successors and assigns as the mortgagee.  A year later, New Century filed Chapter 11 bankruptcy; during the bankruptcy, it filed a "notice of rejection" regarding its contract with MERS, which the bankruptcy court granted.  Id.  Five years after the bankruptcy filing, MERS assigned the mortgage.  Id.  The plaintiff/mortgagor challenged the assignment as void because of the notice of rejection.  Id. at *8.  The court rejected the argument and granted the defendant's motion to dismiss, holding that "[t]he bankruptcy court's order does not divest MERS of interests it previously acquired with regard to properties on which New Century made loans as to which MERS was nominee prior to New Century's bankruptcy."  Id. at 8.  Rejection of executory contracts under § 365 "does not impact prior completed acts under the contract."  Id.

Other federal cases addressing the question have reached the same conclusion. See, e.g., Trang v. Taylor Bean, 600 F. App'x 191, 194 (5th Cir. 2015) (§ 365 rejection of executory contract in bankruptcy relates only to unfulfilled aspects of contract and does not invalidate contract; MERS's right to assign is independent of unfulfilled obligations); Echezona v. Wells Fargo, C.A. No. 1:12-CV-00254-ODE-JFK, 2012 WL 12872909, at *11 (N.D. Ga. Nov. 13, 2012) (rejecting argument that mortgage assignments were invalid because MERS no longer had authority to act as nominee once bankrupt lender rejected its executory contracts with MERS; these facts insufficient to demonstrate that MERS no longer had authority to make assignments for lender's successors and assigns); In re Marron, 485 B.R. 485, 489 (D. Mass. 2012) (despite rejection of MERS contract under 11 U.S.C. § 365(g), "lender's bankruptcy does not affect the ability of MERS to assign a mortgage").

Based on the foregoing, I find that Plaintiff's challenge to the viability of the MERS assignment relies on an erroneous interpretation of a provision of federal bankruptcy law and otherwise is not supported by facts sufficient to render it plausible. In light of Plaintiff's concession at the hearing that the nullification of MERS's authority to assign resulting from the bankruptcy filing of the § 365 notice of rejection is the only buttress supporting her complaint, I recommend that the pleading be dismissed.

What remains is Plaintiff's motion to amend. In light of Plaintiff's abandonment of her claim of breach of the automatic stay, its only relevant addition is proposed Paragraph 29, which sets out, on "good information and belief, subject to further discovery," what appears to be nothing more than the conclusory statement that the People's note and the MERS mortgage became part of the People's bankruptcy estate. At the hearing, Plaintiff conceded that this addition adds nothing new for the Court's consideration. She is right – even if the Court were to

treat this as a factual allegation and accept as true that the note and People's rights in connection with the mortgage all landed in its bankruptcy estate, this would not alter the analysis. MERS's authority to act for People's successor empowered it to assign the mortgage on behalf of People's bankruptcy estate. Put differently, with respect to the note, the identity of its holder is not material; with respect to the mortgage, Plaintiff's "good information and belief" cannot overcome the clear language of the mortgage, which granted to MERS the power to assign without regard to the identity of the note holder.

Based on the foregoing, I find that Plaintiff's proposed amendment is futile. Accordingly, by text order based on the analysis in this report and recommendation, the motion has been denied.

## IV.   CONCLUSION

I recommend that the Court grant Defendants' motion to dismiss (ECF No. 5) and dismiss the complaint in its entirety. In addition, by text order based on the analysis in this report and recommendation, Plaintiff's motion to amend (ECF No. 9) has been denied as futile.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 11, 2017